1  LYNN HUBBARD, III, SBN 69773
   SCOTTLYNN J HUBBARD, IV, SBN 212970   FILED
2  **DISABLED ADVOCACY GROUP, APLC**
3  12 Williamsburg Lane   2009 JUL 22  AM 10: 09
   Chico, CA 95926
4  Telephone: (530) 895-3252   CLERK US DISTRICT COURT
   Facsimile: (530) 894-8244   SOUTHERN DISTRICT OF CALIFORNIA
5                              BY _____ /w/ _____ DEPUTY
6  Attorneys for Plaintiff
7
8
9              UNITED STATES DISTRICT COURT
10             SOUTHERN DISTRICT OF CALIFORNIA
11
12
13 BARBARA HUBBARD,              No. '09 CV 1581   JLS JMA
14       Plaintiff,
                                 **Plaintiff's Complaint**
15       vs.
16 PLAZA BONITA, LP; WESTFIELD
17 AMERICA, INC.; JCPENNY
   COMPANY, INC. dba JCPENNEY
18 #634-6; JCPENNEY PROPERTIES,
19 INC.; CBC RESTAURANT CORP.
   dba CORNER BAKERY CAFE
20 #257; MAX RAVE, LLC dba RAVE
21 #647; THE INDIANA FINISH
   LINE, INC. dba FINISH LINE #406;
22 MAX RAVE, LLC dba RAVE GIRL
23 #521; VANS, INC. dba VANS
   TENNIS SHOES #63; FLAVA
24 ENTERPRISES, INC. dba HOUSE
25 OF FLAVA; JOHNNY ROCKETS
   INTERNATIONAL, INC. dba
26 JOHNNY ROCKETS; APPLE
27 SOCAL, LLC dba APPLEBEE'S
28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  NEIGHBORHOOD GRILL & BAR
2  #5714; MOTHERS WORK, INC.
3  dba MOTHERHOOD MATERNITY
   #373; J.M. HOLLISTER, LLC dba
4  HOLLISTER #278; FOREVER 21
5  RETAIL, INC. FOREVER 21;
   LERNER NEW YORK, INC. dba
6  NEW YORK & CO. #852; A E
7  RETAIL WEST, LLC dba
   AMERICAN EAGLE
8  OUTFITTERS; ATHLEISURE,
9  INC. dba SUN DIEGO SURF &
10 SPORT; ROX FOX CO.; HOT
   TOPIC, INC. dba TORRID #5056;
11 THE WET SEAL RETAIL, INC. dba
12 WET SEAL #70; VICTORIA'S
   SECRET STORES, LLC dba
13 VICTORIA'S SECRET #567;
14 STEVE T. YU dba VIBE;
15 FREDERICKS OF HOLLYWOOD
   STORES, INC. dba FREDERICKS
16 OF HOLLYWOOD #215;
17 MICHAEL CHEN dba CASUAL
   TIME; SUSAN CHEN dba
18 CASUAL TIME; CHARLOTTE
19 RUSSE, INC. dba CHARLOTTE
20 RUSSE #6; KAP DO NO dba
   REVOLUTION; EXPRESS
21 FASHION APPAREL, LLC dba
22 EXPRESS #762; RAVE, INC. dba
   RAVE #654; BORDERS, INC. dba
23 BORDERS BOOKS & MUSIC;
24 ROHRBACK 1, LLC dba
25 DICKEY'S BARBECUE PIT; SAM
   CHUL KWON dba REFERENCE 5;
26 NO FEAR RETAIL STORES, INC.
27 dba NO FEAR #54; JBW OF
   WASHINGTON, LLC dba ROMY;
28 CORNERSTONE APPAREL, INC.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   dba PAPAYA CLOTHING; HOT            )
2   TOPIC, INC. dba HOT TOPIC;          )
    PACIFIC SUNWEAR STORES              )
3   CORP. dba AMERICAN EAGLE            )
4   #873; VANS HENNES &                 )
    MAURITZ GBC AB, LLC dba             )
5   VANS; BODY BASICS WEST,             )
6   INC. dba BODY BASICS,               )
                                        )
7        Defendants.                    )
                                        )
8   _____ )

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   SUMMARY

1.   This is a civil rights action by plaintiff Barbara Hubbard ("Hubbard") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complexes known as:

Common Areas
3030 Plaza Bonita Road
National City, CA  91950
(APN 564-471-02, 05, 07, 08, 09, 10; 564-472-03, 04)
(hereafter "the Plaza Bonita Common Area Facility")

Corner Bakery Café #257
3030 Plaza Bonita Road, Suite 2500
National City, CA  91950
(hereafter "the Corner Bakery Facility")

Rave #647
3030 Plaza Bonita Road, Suite 2344
National City, CA  91950
(hereafter "the Rave Facility")

Finish Line #406
3030 Plaza Bonita Road, Suite 2224
National City, CA  91950
(hereafter "the Finish Line Facility")

Rave Girl #521
3030 Plaza Bonita Road, Suite 1058
National City, CA  91950
(hereafter "the Rave Girl Facility")

Vans Tennis Shoes #63
3030 Plaza Bonita Road, Suite 1012
National City, CA  91950
(hereafter "the Vans Facility")

1

House of Flava

2

3030 Plaza Bonita Road, Suite 1188

National City, CA  91950

3

(hereafter "the House of Flava Facility")

4

5

Johnny Rockets

3030 Plaza Bonita Road

6

National City, CA  91950

7

(hereafter "the Johnny Rockets Facility")

8

Applebee's Neighborhood Grill & Bar #5714

9

3030 Plaza Bonita Road, Suite 1298

10

National City, CA  91950

(hereafter "the Applebee's Facility")

11

12

Motherhood Maternity #373

3030 Plaza Bonita Road, Suite 1064

13

National City, CA  91950

14

(hereafter "the Motherhood Facility")

15

Hollister

16

3030 Plaza Bonita Road, Suite 2288

17

National City, CA  91950

(hereafter "the Hollister Facility")

18

19

Forever 21

20

3030 Plaza Bonita Road

National City, CA  91950

21

(hereafter "the Forever 21 Facility")

22

23

New York & Co. #852

3030 Plaza Bonita Road, Suite 1144

24

National City, CA  91950

25

(hereafter "the New York & Co. Facility")

26

American Eagle Outfitters

27

3030 Plaza Bonita Road, Suite 2200

National City, CA  91950

28

(hereafter "the American Eagle Facility")

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sun Diego Surf & Sport
3030 Plaza Bonita Road, Suite 1160
National City, CA  91950
(hereafter "the Sun Diego Facility")

Rox Fox
3030 Plaza Bonita Road, Suite 1326
National City, CA  91950
(hereafter "the Rox Fox Facility")

Torrid #5056
3030 Plaza Bonita Road, Suite 2076
National City, CA  91950
(hereafter "the Torrid Facility")

Wet Seal #70
3030 Plaza Bonita Road, Suite 2410
National City, CA  91950
(hereafter "the Wet Seal Facility")

Victoria's Secret #567
3030 Plaza Bonita Road, Suite 1206
National City, CA  91950
(hereafter "the Victoria's Secret Facility")

Vibe
3030 Plaza Bonita Road, Suite 1465
National City, CA  91950
(hereafter "the Vibe Facility")

Fredericks of Hollywood #215
3030 Plaza Bonita Road, Suite 2280
National City, CA  91950
(hereafter "the Fredericks Facility")

Causal Time
3030 Plaza Bonita Road, Suite 1184
National City, CA  91950
(hereafter "the Causal Time Facility")

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1    Charlotte Russe #6
2    3030 Plaza Bonita Road, Suite 1256
3    National City, CA  91950
    (hereafter "the Charlotte Russe Facility")
4

5    Revolution
    3030 Plaza Bonita Road, Suite 1155
6    National City, CA  91950
7    (hereafter "the Revolution Facility")

8
    Express #762
9    3030 Plaza Bonita Road, Suite 2222
10   National City, CA  91950
    (hereafter "the Express Facility")
11

12   Aeropostale #654
    3030 Plaza Bonita Road, Suite 2304C
13   National City, CA  91950
14   (hereafter "the Aeropostale Facility")

15
    Borders Books & Music
16   3030 Plaza Bonita Road, Suite 2540
17   National City, CA  91950
    (hereafter "the Borders Facility")
18

19   Dickey's Barbecue Pit
20   3030 Plaza Bonita Road, Suite 1108
    National City, CA  91950
21   (hereafter "the Dickey's Facility")

22
    Reference 5
23   3030 Plaza Bonita Road, Suite 1336
24   National City, CA  91950
    (hereafter "the Reference 5 Facility")
25

26   No Fear #54
27   3030 Plaza Bonita Road, Suite 1450
    National City, CA  91950
28   (hereafter "the No Fear Facility")

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1

Romy
3030 Plaza Bonita Road, Suite 1475
National City, CA  91950
(hereafter "the Romy Facility")

2

3

4

Papaya Clothing
3030 Plaza Bonita Road, Suite 1006
National City, CA  91950
(hereafter "the Papaya Facility")

5

6

7

8

Hot Topic
3030 Plaza Bonita Road, Suite 2066
National City, CA  91950
(hereafter "the Hot Topic Facility")

9

10

11

PacSun #873
3030 Plaza Bonita Road, Suite 2072
National City, CA  91950
(hereafter "the PacSun Facility")

12

13

14

15

H & M
3030 Plaza Bonita Road, Suite 2232
National City, CA  91950
(hereafter "the H & M Facility")

16

17

18

19

Body Basics
3030 Plaza Bonita Road, Suite 1180
National City, CA  91950
(hereafter "the Body Basics Facility")

20

21

22

23

     2.     Pursuant to the Americans with Disabilities Act of 1990, ( 42 U.S.C.

24

§§ 12101 et seq.), and related California statutes, Hubbard seeks damages,

25

injunctive and declaratory relief, and attorney fees and costs, against:

26

- Plaza Bonita, LP and Westfield America, Inc. (hereinafter the "Plaza

27

  Bonita Common Area Defendants")

28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

- CBC Restaurant Corp. dba Corner Bakery Café #257; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Corner Bakery Defendants")
- Max Rave, LLC dba Rave #647; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Rave Defendants")
- The Indiana Finish Line, Inc. dba Finish Line #406; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Finish Line Defendants")
- Max Rave, LLC dba Rave Girl #521; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Rave Girl Defendants")
- Vans, Inc. dba Vans Tennis Shoes #63; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Vans Defendants")
- Flava Enterprises, Inc. dba House of Flava; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "House of Flava Defendants")
- Johnny Rockets International, Inc. dba Johnny Rockets; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Johnny Rockets Defendants")
- Apple SoCal, LLC dba Applebee's Neighborhood Grill & Bar #5714; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Applebee's Defendants")
- Mothers Work, Inc. dba Motherhood Maternity #373; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Motherhood Defendants")
- J.M. Hollister, LLC dba Hollister #278; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Hollister Defendants")
- Forever 21 Retail, Inc. dba Forever 21; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Forever 21 Defendants")
- Lerner New York, Inc. dba New York & Co. #852; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "New York & Co. Defendants")

1  • A E Retail West, LLC dba American Eagle Outfitters; Bonita Plaza, LP;
2     and, Westfield America, Inc. (hereinafter the "American Eagle
3     Defendants")

4  • Athleisure, Inc. dba Sun Diego Surf & Sport; Bonita Plaza, LP; and,
5     Westfield America, Inc. (hereinafter the "Sun Diego Defendants")

6  • Rox Fox Co.; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter
7     the "Rox Fox Defendants")

8  • Hot Topic, Inc. dba Torrid #5056; Bonita Plaza, LP; and, Westfield
9     America, Inc. (hereinafter the "Torrid Defendants")

10 • The Wet Seal Retail, Inc. dba Wet Seal #70; Bonita Plaza, LP; and,
11    Westfield America, Inc. (hereinafter the "Wet Seal Defendants")

12 • Victoria's Secret Stores, LLC dba Victoria's Secret #567; Bonita Plaza,
13    LP; and, Westfield America, Inc. (hereinafter the "Victoria's Secret
14    Defendants")

15 • Steve T. Yu dba Vibe; Bonita Plaza, LP; and, Westfield America, Inc.
16    (hereinafter the "Vibe Defendants")

17 • Fredericks of Hollywood Stores, Inc. dba Fredericks of Hollywood #215;
18    Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the
19    "Fredericks Defendants")

20 • Michael Chen dba Casual Time; Susan Chen dba Casual Time; Bonita
21    Plaza, LP; and, Westfield America, Inc. (hereinafter the "Causal Time
22    Defendants")

23 • Charlotte Russe, Inc. dba Charlotte Russe #6; Bonita Plaza, LP; and,
24    Westfield America, Inc. (hereinafter the "Charlotte Russe Defendants")

25 • Kap Do No dba Revolution; Bonita Plaza, LP; and, Westfield America,
26    Inc. (hereinafter the "Revolution Defendants")

27 • Express Fashion Apparel, LLC dba Express #762; Bonita Plaza, LP; and,
28    Westfield America, Inc. (hereinafter the "Express Defendants")

- Aeropostale, Inc. dba Aeropostale #654; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Aeropostale Defendants")
- Borders, Inc. dba Borders Books & Music; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Borders Defendants")
- Rohrback 1, LLC dba Dickey's Barbecue Pit; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Dickey's Defendants")
- Sam Chul Kwon dba Reference 5; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Reference 5 Defendants")
- No Fear Retail Stores, Inc. dba No Fear #54; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "No Fear Defendants")
- JBW of Washington, LLC dba Romy; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Romy Defendants")
- Cornerstone Apparel, Inc. dba Papaya Clothing (hereinafter the "Papaya Defendants")
- Hot Topic, Inc. dba Hot Topic; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Hot Topic Defendants")
- Pacific Sunwear Stores Corp. dba PacSun #873; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "PacSun Defendants")
- H & M Hennes & Mauritz GBC AB, LLC dba H & M; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "H & M Defendants")
- Body Basic West, Inc. dba Body Basics; Bonita Plaza, LP; and, Westfield America, Inc. (hereinafter the "Body Basics Defendants")

## II.    JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.    Supplemental jurisdiction for claims brought under parallel California law—arising from the same nucleus of operative facts—is predicated on 28 U.S.C. § 1367.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1    5.    Hubbard's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

2                            III.    VENUE

3    6.    All actions complained of herein take place within the jurisdiction

4    of the United States District Court, Southern District of California, and venue is

5    invoked pursuant to 28 U.S.C. § 1391(b), (c).

6                            IV.    PARTIES

7    7.    The Plaza Bonita Common Area Defendants own, operate, manage,

8    and/or lease the Plaza Bonita Common Area Facility, and consist of a person (or

9    persons), firm, and/or corporation.

10    8.    The Corner Bakery Defendants own, operate, manage, and/or lease

11    the Corner Bakery Facility, and consist of a person (or persons), firm, and/or

12    corporation.

13    9.    The Rave Defendants own, operate, manage, and/or lease the Rave

14    Facility, and consist of a person (or persons), firm, and/or corporation.

15    10.    The Finish Line Defendants own, operate, manage, and/or lease the

16    Finish Line Facility, and consist of a person (or persons), firm, and/or

17    corporation.

18    11.    The Rave Girl Defendants own, operate, manage, and/or lease the

19    Rave Girl Facility, and consist of a person (or persons), firm, and/or corporation.

20    12.    The Vans Defendants own, operate, manage, and/or lease the Vans

21    Facility, and consist of a person (or persons), firm, and/or corporation.

22    13.    The House of Flava Defendants own, operate, manage, and/or lease

23    the House of Flava Facility, and consist of a person (or persons), firm, and/or

24    corporation.

25    14.    The Johnny Rockets Defendants own, operate, manage, and/or lease

26    the Johnny Rockets Facility, and consist of a person (or persons), firm, and/or

27    corporation.

28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

15.     The Applebee's Defendants own, operate, manage, and/or lease the Applebee's Facility, and consist of a person (or persons), firm, and/or corporation.

16.     The Motherhood Defendants own, operate, manage, and/or lease the Motherhood Facility, and consist of a person (or persons), firm, and/or corporation.

17.     The Hollister Defendants own, operate, manage, and/or lease the Hollister Facility, and consist of a person (or persons), firm, and/or corporation.

18.     The Forever 21 Defendants own, operate, manage, and/or lease the Forever 21 Facility, and consist of a person (or persons), firm, and/or corporation.

19.     The New York & Co. Defendants own, operate, manage, and/or lease the New York & Co. Facility, and consist of a person (or persons), firm, and/or corporation.

20.     The American Eagle Defendants own, operate, manage, and/or lease the American Eagle Facility, and consist of a person (or persons), firm, and/or corporation.

21.     The Sun Diego Defendants own, operate, manage, and/or lease the Sun Diego Facility, and consist of a person (or persons), firm, and/or corporation.

22.     The Rox Fox Defendants own, operate, manage, and/or lease the Rox Fox Facility, and consist of a person (or persons), firm, and/or corporation.

23.     The Torrid Defendants own, operate, manage, and/or lease the Torrid Facility, and consist of a person (or persons), firm, and/or corporation.

24.     The Wet Seal Defendants own, operate, manage, and/or lease the Wet Seal Facility, and consist of a person (or persons), firm, and/or corporation.

25.    The Victoria's Secret Defendants own, operate, manage, and/or lease the Victoria's Secret Facility, and consist of a person (or persons), firm, and/or corporation.

26.    The Vibe Defendants own, operate, manage, and/or lease the Vibe Facility, and consist of a person (or persons), firm, and/or corporation.

27.    The Fredericks Defendants own, operate, manage, and/or lease the Fredericks Facility, and consist of a person (or persons), firm, and/or corporation.

28.    The Causal Time Defendants own, operate, manage, and/or lease the Causal Time Facility, and consist of a person (or persons), firm, and/or corporation.

29.    The Charlotte Russe Defendants own, operate, manage, and/or lease the Charlotte Russe Facility, and consist of a person (or persons), firm, and/or corporation.

30.    The Revolution Defendants own, operate, manage, and/or lease the Revolution Facility, and consist of a person (or persons), firm, and/or corporation.

31.    The Express Defendants own, operate, manage, and/or lease the Express Facility, and consist of a person (or persons), firm, and/or corporation.

32.    The Aeropostale Defendants own, operate, manage, and/or lease the Aeropostale Facility, and consist of a person (or persons), firm, and/or corporation.

33.    The Borders Defendants own, operate, manage, and/or lease the Borders Facility, and consist of a person (or persons), firm, and/or corporation.

34.    The Dickey's Defendants own, operate, manage, and/or lease the Dickey's Facility, and consist of a person (or persons), firm, and/or corporation.

1        35.    The Reference 5 Defendants own, operate, manage, and/or lease the
2   Reference 5 Facility, and consist of a person (or persons), firm, and/or
3   corporation.

4        36.    The No Fear Defendants own, operate, manage, and/or lease the No
5   Fear Facility, and consist of a person (or persons), firm, and/or corporation.

6        37.    The Romy Defendants own, operate, manage, and/or lease the Romy
7   Facility, and consist of a person (or persons), firm, and/or corporation.

8        38.    The Papaya Defendants own, operate, manage, and/or lease the
9   Papaya Facility, and consist of a person (or persons), firm, and/or corporation.

10        39.    The Hot Topic Defendants own, operate, manage, and/or lease the
11   Hot Topic Facility, and consist of a person (or persons), firm, and/or corporation.

12        40.    The PacSun Defendants own, operate, manage, and/or lease the
13   PacSun Facility, and consist of a person (or persons), firm, and/or corporation.

14        41.    The H & M Defendants own, operate, manage, and/or lease the H &
15   M Facility, and consist of a person (or persons), firm, and/or corporation.

16        42.    The Body Basics Defendants own, operate, manage, and/or lease the
17   Body Basics Facility, and consist of a person (or persons), firm, and/or
18   corporation.

19        43.    Hubbard has multiple conditions that affect one or more major life
20   functions. She requires the use of motorized wheelchair and a mobility-equipped
21   vehicle when traveling about in public. Consequently, Hubbard is "physically
22   disabled," as defined by all applicable California and United States laws, and a
23   member of the public whose rights are protected by these laws.

24                           V.    FACTS

25        44.    The Plaza Bonita Common Area Facility is a sales or retail
26   establishment, open to the public, which is intended for nonresidential use and
27   whose operation affects commerce.

28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

45.   The Corner Bakery Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

46.   The Rave Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

47.   The Finish Line Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

48.   The Rave Girl Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

49.   The Vans Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

50.   The House of Flava Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

51.   The Johnny Rockets Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

52.   The Applebee's Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

53.   The Motherhood Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

54. The Hollister Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

55. The Forever 21 Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

56. The New York & Co. Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

57. The American Eagle Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

58. The Sun Diego Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

59. The Rox Fox Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

60. The Torrid Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

61. The Wet Seal Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

62. The Victoria's Secret Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

63.   The Vibe Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

64.   The Fredericks Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

65.   The Causal Time Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

66.   The Charlotte Russe Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

67.   The Revolution Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

68.   The Express Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

69.   The Aeropostale Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

70.   The Borders Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

71.   The Dickey's Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

72.   The Reference 5 Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

73.   The No Fear Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

74.   The Romy Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

75.   The Papaya Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

76.   The Hot Topic Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

77.   The PacSun Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

78.   The H & M Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

79.   The Body Basics Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

80.   Hubbard visited these facilities and encountered barriers (both physical and intangible) that interfered with—if not outright denied—her ability to use and enjoy the goods, services, privileges, and accommodations offered at all of the facilities.

1    81.    To the extent known by Hubbard, the barriers at the Plaza Bonita
2  Common Area Facility included, but are not limited to, the following:

3    *Food Court:*
4    • There is no seating designated as being accessible to the disabled;
5      and,
6    • There is no accessible seating.

7    *Restroom A:*
8    • There is no handle mounted below the stall door lock;
9    • The water closet is an obstruction to the use of the disposable seat
10     cover dispenser;
11   • The disposable seat cover dispenser is an obstruction to the use of
12     the back grab bar;
13   • The toilet tissue dispenser is an obstruction to the use of the side
14     grab bar;
15   • The toilet tissue dispenser protrudes into the clear maneuvering
16     space needed to access the water closet;

17   *Restroom B:*
18   • There is no handle mounted below the lock of the water closet stall
19     door;
20   • The toilet tissue dispenser is an obstruction to the use of the side
21     grab bar;
22   • The toilet tissue dispenser protrudes into the clear maneuvering
23     space needed to access the water closet;

24   *Restroom C:*
25   • The handle is not mounted below the water closet stall door lock;
26   • The stall door is not self-closing;
27   • The toilet tissue dispenser and waste receptacle protrude into the
28     clear maneuvering space needed to access the water closet;

- The pipes underneath the lavatories are improperly and/or incompletely wrapped;
- There is insufficient clear knee space under the lavatories due to the "lip" of the counter;

*Restroom D:*

- The stall door is not self-closing;
- There is no handle mounted below the lock on the stall door;
- The toilet tissue dispenser protrudes into the clear maneuvering space needed to access the water closet;
- The toilet tissue dispenser is an obstruction to the use of the side grab bar;
- The pipes underneath the lavatory are not wrapped;

*Restroom E:*

- The stall door is not self-closing;
- There is insufficient clear floor space inside the stall as it is too small;
- The coat hook is mounted too high;
- The water closet is an obstruction to the use of the disposable seat cover dispenser;
- The pipes underneath the lavatories are improperly and/or incompletely wrapped;
- There is insufficient clear knee space underneath the lavatories due to the "lip" of the counter;

*Parking Area:*

- All of the van accessible signage throughout the parking area/parking garage is incorrect;
- The access aisle near the Corner Bakery Facility does not have the words "NO PARKING" within;

- There are no accessible parking spaces (out of a total 199) on the first level of the parking garage;
- There are only two accessible parking spaces (out of a total 128) on the second level of the parking garage;
- There are only five accessible parking spaces (out of a total 172) on the third level of the parking garage (section A);
- All of the disabled parking spaces on the third level of the parking garage (section A) require a wheelchair occupant to travel behind parked cars that are not their own;
- There is only one disabled parking space on the third level of the parking garage (section B) (out of a total 100) and though it says that it is "van accessible," it is not;
- The van accessible parking space near Pat and Oscars does not have an access aisle on the passenger side;
- The van accessible parking space near the vacant store (near Pat and Oscars) requires a wheelchair occupant to travel behind parked cars other than their own;
- There is no accessible route from the parking behind the Target to the entrances;
- One of the disabled parking spaces outside of the Borders Facility lacks any signage;
- The disabled parking spaces outside of the Applebee's Facility require a wheelchair occupant to travel behind parked cars other than their own;
- There are no disabled parking spaces at the back of the Facility (older parking lot);
- There are only 2 disabled parking spaces (out of a total 168) outside of the El Torito and Corner Bakery Facility;

1   • The access aisle adjacent to the disabled parking space outside of
2     Outback has slopes and cross slopes that exceed 2.0% due to the
3     encroaching built-up curb ramp;
4   • There are only four disabled parking spaces (out of a total 309)
5     outside the Outback;
6   • There is one disabled parking space outside of the Outback that
7     lacks any kind of signage;
8   • The slope and cross slopes of multiple parking spaces outside of the
9     Applebee's Facility exceed 2.0%;
10  • The slopes and cross slopes of multiple parking spaces outside of El
11    Torrito, AMC, and the Borders Facility exceed 2.0%;
12  • The slopes and cross slopes of all of the parking spaces outside of
13    the Corner Bakery Facility exceed 2.0%;
14  • The slopes of multiple parking spaces on the second level of the
15    parking garage exceed 2.0%;
16  • The cross slope of at least one parking spaces on the third level of
17    the parking garage (section C) exceeds 2.0%;
18  • The slopes and cross slopes of multiple parking spaces on the third
19    level of the parking garage (section F) exceed 2.0%;

20  These barriers prevented Hubbard from enjoying full and equal access at
21  the Plaza Bonita Common Area Facility.

22      82.    Hubbard was also deterred from visiting the Plaza Bonita Common
23  Area Facility because she knew that the Plaza Bonita Common Area Facility's
24  goods, services, facilities, privileges, advantages, and accommodations were
25  unavailable to physically disabled patrons (such as herself). She continues to be
26  deterred from visiting the Plaza Bonita Common Area Facility because of the
27  future threats of injury created by these barriers.
28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

83.     To the extent known by Hubbard, the barriers at the Corner Bakery Facility included, but are not limited to, the following:

- There is no seating designated as being accessible to the disabled;
- There is no accessible seating;
- There is no seating on the patio area designated as being accessible to the disabled;
- There is no accessible seating on the patio area;
- The operable part of the soda dispenser is too high;
- The condiments are outside of the required reach range limits;
- The women's restroom door require more than five (5) pounds of force to operate;
- The stall door is not self-closing; and,
- The soap dispenser is outside of the required reach range limits.

These barriers prevented Hubbard from enjoying full and equal access at the Corner Bakery Facility.

84.     Hubbard was also deterred from visiting the Corner Bakery Facility because she knew that the Corner Bakery Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Corner Bakery Facility because of the future threats of injury created by these barriers.

85.     To the extent known by Hubbard, the barriers at the Rave Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA;
- There is no door to the dressing room, only curtains, thereby causing a patron to use manual dexterity in order to close them;
- The dressing room mirror is not mounted so as to afford a view to a person both sitting a bench and standing up;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- There is no space for a wheelchair beside the bench in the dressing room;
- The dressing room bench is mounted too high;
- The clothes hooks are mounted too high.

These barriers prevented Hubbard from enjoying full and equal access at the Rave Facility.

86.   Hubbard was also deterred from visiting the Rave Facility because she knew that the Rave Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Rave Facility because of the future threats of injury created by these barriers.

87.   To the extent known by Hubbard, the barriers at the Finish Line Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA;
- The clothing hooks are mounted too high;
- The dressing room mirror is not mounted so as to afford a view to a person both sitting a bench and standing up;
- There is no space for a wheelchair beside the bench in the dressing room; and,
- The dressing room bench is not mounted to the wall.

These barriers prevented Hubbard from enjoying full and equal access at the Finish Line Facility.

88.   Hubbard was also deterred from visiting the Finish Line Facility because she knew that the Finish Line Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Finish Line Facility because of the future threats of injury created by these barriers.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

89.   To the extent known by Hubbard, the barriers at the Rave Girl Facility included, but are not limited to, the following:

- All of the dressing rooms are too small; and,
- The only dressing room large enough to fit a wheelchair is completely blocked by clothing racks and merchandise and plaintiff was not able to get inside.

These barriers prevented Hubbard from enjoying full and equal access at the Rave Girl Facility.

90.   Hubbard was also deterred from visiting the Rave Girl Facility because she knew that the Rave Girl Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Rave Girl Facility because of the future threats of injury created by these barriers.

91.   To the extent known by Hubbard, the barriers at the Vans Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA;
- The lock for the dressing room is on the outside of the door – you must have an employee let you out;
- There is no space for a wheelchair beside the bench in the dressing room; and,
- The dressing room bench is not mounted to the wall.

These barriers prevented Hubbard from enjoying full and equal access at the Vans Facility.

92.   Hubbard was also deterred from visiting the Vans Facility because she knew that the Vans Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled

patrons (such as herself). She continues to be deterred from visiting the Vans Facility because of the future threats of injury created by these barriers.

93.    To the extent known by Hubbard, the barriers at the House of Flava Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA
- The dressing room door swings in thereby causing insufficient clear floor space within;
- There is no space for a wheelchair beside the bench in the dressing room; and,
- The clothing hooks are mounted too high.

These barriers prevented Hubbard from enjoying full and equal access at the House of Flava Facility.

94.    Hubbard was also deterred from visiting the House of Flava Facility because she knew that the House of Flava Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the House of Flava Facility because of the future threats of injury created by these barriers.

95.    To the extent known by Hubbard, the barriers at the Johnny Rockets Facility included, but are not limited to, the following:

- There is no portion of the bar lowered to accommodate a patron in a wheelchair;
- There is no seating designated as being accessible to the disabled; and,
- There is no accessible seating.

These barriers prevented Hubbard from enjoying full and equal access at the Johnny Rockets Facility.

96.     Hubbard was also deterred from visiting the Johnny Rockets Facility because she knew that the Johnny Rockets Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Johnny Rockets Facility because of the future threats of injury created by these barriers.

97.     To the extent known by Hubbard, the barriers at the Applebee's Facility included, but are not limited to, the following:

- There is no ISA at the entrance;
- The entrance/exit door requires more than five (5) pounds of force to operate;
- There is no seating designated as being accessible to the disabled;
- There is no accessible seating;
- The stall door is not self-closing;
- There is no handle mounted below the stall door lock;
- The disposable seat cover dispenser is mounted too high;
- The water closet is an obstruction to the use of the disposable seat cover dispenser;
- The toilet tissue dispenser protrudes into the clear maneuvering space needed to access the water closet;
- The soap dispenser is outside of the required reach range limits;
- The operable part of the paper towel dispenser is too high; and,
- The pipes underneath the lavatory are not wrapped.

These barriers prevented Hubbard from enjoying full and equal access at the Applebee's Facility.

98.     Hubbard was also deterred from visiting the Applebee's Facility because she knew that the Applebee's Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically

disabled patrons (such as herself). She continues to be deterred from visiting the Applebee's Facility because of the future threats of injury created by these barriers.

99.    To the extent known by Hubbard, the barriers at the Motherhood Facility included, but are not limited to, the following:

- The counters are too high with no portion lowered to accommodate a patron in a wheelchair;
- The pay point machine is too high;
- The accessible dressing room is not identified with an ISA;
- There is no door to the dressing room, only curtains, thereby causing a patron to use manual dexterity in order to close them;
- There is no space for a wheelchair beside the bench in the dressing room;
- The dressing room bench is mounted too high;
- The clothes hangers are mounted too high;
- There is insufficient clear floor space in the restroom due to the boxes of stacked merchandise/supplies (ie, hangers, clothing racks, vacuum, etc.);
- There is a floor-to-ceiling pipe mounted on top of the side grab bar, thereby obstructing its use;
- The water closet's flush valve is not located on the wide side;
- The pipes underneath the lavatory are improperly and incompletely wrapped; and,
- There is insufficient clear knee space underneath the lavatory due to the cleaning supplies stored there.

These barriers prevented Hubbard from enjoying full and equal access at the Motherhood Facility.

100.   Hubbard was also deterred from visiting the Motherhood Facility because she knew that the Motherhood Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Motherhood Facility because of the future threats of injury created by these barriers.

101.   To the extent known by Hubbard, the barriers at the Hollister Facility included, but are not limited to, the following:

- The counter is too high with no portion lowered to accommodate a patron in a wheelchair;
- The pay point machine is too high;
- One of the dressing rooms is identified with an ISA, however it is too small;
- There is no door to the dressing room, only curtains, thereby causing a patron to use manual dexterity in order to close them;
- The dressing room is too small and has insufficient clear floor space;
- The dressing room mirror is not mounted so as to afford a view to a person both sitting a bench and standing up;
- The bench is not mounted to the wall;
- There is no space for a wheelchair beside the bench in the dressing room; and,
- There are rugs throughout the store that are not secured to the floor.

These barriers prevented Hubbard from enjoying full and equal access at the Hollister Facility.

102.   Hubbard was also deterred from visiting the Hollister Facility because she knew that the Hollister Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically

1  disabled patrons (such as herself). She continues to be deterred from visiting the
2  Hollister Facility because of the future threats of injury created by these barriers.

3     103.   To the extent known by Hubbard, the barriers at the Forever 21
4  Facility included, but are not limited to, the following:

5     • The accessible dressing room is not identified with an ISA;

6     • The dressing room is too small; and,

7     • There is no space for a wheelchair beside the bench in the dressing
8       room.

9     These barriers prevented Hubbard from enjoying full and equal access at
10 the Forever 21 Facility.

11    104.   Hubbard was also deterred from visiting the Forever 21 Facility
12 because she knew that the Forever 21 Facility's goods, services, facilities,
13 privileges, advantages, and accommodations were unavailable to physically
14 disabled patrons (such as herself). She continues to be deterred from visiting the
15 Forever 21 Facility because of the future threats of injury created by these
16 barriers.

17    105.   To the extent known by Hubbard, the barriers at the New York &
18 Co. Facility included, but are not limited to, the following:

19    • The dressing room door swings in, thereby causing insufficient clear
20      floor space within;

21    • The dressing room mirror is not mounted so as to afford a view to a
22      person both sitting a bench and standing up;

23    • There is no space for a wheelchair beside the bench in the dressing
24      room; and,

25    • The dressing room bench is not mounted to the wall.

26    These barriers prevented Hubbard from enjoying full and equal access at
27 the New York & Co. Facility.

28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

106.   Hubbard was also deterred from visiting the New York & Co. Facility because she knew that the New York & Co. Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the New York & Co. Facility because of the future threats of injury created by these barriers.

107.   To the extent known by Hubbard, the barriers at the American Eagle Facility included, but are not limited to, the following:

- The lowered and accessible portion of the counter is obstructed by supplies and inventory;
- The dressing room is too small and lacks the required clear floor space;
- The clothing hooks are mounted too high;
- The dressing room mirror is not mounted so as to afford a view to a person both sitting a bench and standing up;
- There is no space for a wheelchair beside the bench in the dressing room; and,
- The dressing room bench is not mounted to the wall.

These barriers prevented Hubbard from enjoying full and equal access at the American Eagle Facility.

108.   Hubbard was also deterred from visiting the American Eagle Facility because she knew that the American Eagle Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the American Eagle Facility because of the future threats of injury created by these barriers.

///

///

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

109. To the extent known by Hubbard, the barriers at the Sun Diego Facility included, but are not limited to, the following:

- The counters are too high with no portion lowered to accommodate a patron in a wheelchair;
- The clothing hooks are mounted too high;
- The dressing room is too small thereby obstructing the required clear floor space;
- The dressing room mirror is not mounted so as to afford a view to a person both sitting a bench and standing up; and,
- There is no space for a wheelchair beside the bench in the dressing room.

These barriers prevented Hubbard from enjoying full and equal access at the Sun Diego Facility.

110. Hubbard was also deterred from visiting the Sun Diego Facility because she knew that the Sun Diego Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Sun Diego Facility because of the future threats of injury created by these barriers.

111. To the extent known by Hubbard, the barriers at the Rox Fox Facility included, but are not limited to, the following:

- There is no accessible dressing room;
- There is no door to the dressing room, only curtains, thereby causing a patron to use manual dexterity in order to close them;
- There is no mirror inside the dressing room; and,
- There is no bench inside the dressing room.

These barriers prevented Hubbard from enjoying full and equal access at the Rox Fox Facility.

112.   Hubbard was also deterred from visiting the Rox Fox Facility because she knew that the Rox Fox Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Rox Fox Facility because of the future threats of injury created by these barriers.

113.   To the extent known by Hubbard, the barriers at the Torrid Facility included, but are not limited to, the following:

- The counter is too high with no portion lowered to accommodate a patron in a wheelchair;
- None of the dressing rooms are identified with an ISA;
- All of the dressing rooms are too small;
- The dressing room bench is not mounted at the correct height;
- There is no space for a wheelchair beside the bench in the dressing room; and,
- The clothes hooks are mounted too high.

These barriers prevented Hubbard from enjoying full and equal access at the Torrid Facility.

114.   Hubbard was also deterred from visiting the Torrid Facility because she knew that the Torrid Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Torrid Facility because of the future threats of injury created by these barriers.

115.   To the extent known by Hubbard, the barriers at the Wet Seal Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA;
- The dressing room is too small and does not have the required clear floor space;

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

- The dressing room mirror is not mounted so as to afford a view to a person both sitting a bench and standing up; and,
- There is no space for a wheelchair beside the bench in the dressing room.

These barriers prevented Hubbard from enjoying full and equal access at the Wet Seal Facility.

116. Hubbard was also deterred from visiting the Wet Seal Facility because she knew that the Wet Seal Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Wet Seal Facility because of the future threats of injury created by these barriers.

117. To the extent known by Hubbard, the barriers at the Victoria's Secret Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA;
- The dressing room door swings in, thereby causing insufficient clear floor space within;
- The space beside the dressing room bench is too small for a wheelchair; and,
- The dressing room bench is not mounted to the wall.

These barriers prevented Hubbard from enjoying full and equal access at the Victoria's Secret Facility.

118. Hubbard was also deterred from visiting the Victoria's Secret Facility because she knew that the Victoria's Secret Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Victoria's Secret Facility because of the future threats of injury created by these barriers.

119.  To the extent known by Hubbard, the barriers at the Vibe Facility included, but are not limited to, the following:

- The dressing room door swings in, thereby causing insufficient clear floor space within;
- There is no bench in the dressing room;
- The clothes hooks are mounted too high; and,
- One of the dressing rooms is identified with an ISA, however plaintiff was not allowed to use that dressing room during her most recent visit.

These barriers prevented Hubbard from enjoying full and equal access at the Vibe Facility.

120.  Hubbard was also deterred from visiting the Vibe Facility because she knew that the Vibe Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Vibe Facility because of the future threats of injury created by these barriers.

121.  To the extent known by Hubbard, the barriers at the Fredericks Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA;
- The dressing room door lock is not accessible;
- The clothing hooks are mounted too high;
- The dressing room door swings in, thereby causing insufficient clear floor space within;
- The dressing room bench is not mounted at the correct height; and,
- There is no space for a wheelchair beside the bench in the dressing room.

These barriers prevented Hubbard from enjoying full and equal access at the Fredericks Facility.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

122.   Hubbard was also deterred from visiting the Fredericks Facility because she knew that the Fredericks Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Fredericks Facility because of the future threats of injury created by these barriers.

123.   To the extent known by Hubbard, the barriers at the Causal Time Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA;
- There is no door to the dressing room, only curtains, thereby causing a patron to use manual dexterity in order to close them; and,
- There is no bench in the dressing room.

These barriers prevented Hubbard from enjoying full and equal access at the Causal Time Facility.

124.   Hubbard was also deterred from visiting the Causal Time Facility because she knew that the Causal Time Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Causal Time Facility because of the future threats of injury created by these barriers.

125.   To the extent known by Hubbard, the barriers at the Charlotte Russe Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA; and,
- There is no space for a wheelchair beside the bench in the dressing room.

These barriers prevented Hubbard from enjoying full and equal access at the Charlotte Russe Facility.

126.   Hubbard was also deterred from visiting the Charlotte Russe Facility because she knew that the Charlotte Russe Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Charlotte Russe Facility because of the future threats of injury created by these barriers.

127.   To the extent known by Hubbard, the barriers at the Revolution Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA;
- The dressing room door lock is not accessible;
- There is no space for a wheelchair beside the bench in the dressing room;
- The clothes hooks are mounted too high; and,
- The dressing room mirror is not mounted so as to afford a view to a person both sitting a bench and standing up.

These barriers prevented Hubbard from enjoying full and equal access at the Revolution Facility.

128.   Hubbard was also deterred from visiting the Revolution Facility because she knew that the Revolution Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Revolution Facility because of the future threats of injury created by these barriers.

129.   To the extent known by Hubbard, the barriers at the Express Facility included, but are not limited to, the following:

- The pay point machine is too high;
- The accessible dressing room is not identified with an ISA;

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 38

- There is no space for a wheelchair beside the bench in the dressing room; and,
- The dressing room mirror is not mounted so as to afford a view to a person both sitting a bench and standing up.

These barriers prevented Hubbard from enjoying full and equal access at the Express Facility.

130.   Hubbard was also deterred from visiting the Express Facility because she knew that the Express Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Express Facility because of the future threats of injury created by these barriers.

131.   To the extent known by Hubbard, the barriers at the Aeropostale Facility included, but are not limited to, the following:

- The counter is too high with no portion lowered to accommodate a patron in a wheelchair;
- The pay point machine is too high;
- The accessible dressing room is not identified with an ISA;
- The dressing room bench is not mounted to the wall; and,
- There is no space for a wheelchair beside the bench in the dressing room.

These barriers prevented Hubbard from enjoying full and equal access at the Aeropostale Facility.

132.   Hubbard was also deterred from visiting the Aeropostale Facility because she knew that the Aeropostale Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Aeropostale Facility because of the future threats of injury created by these barriers.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

133. To the extent known by Hubbard, the barriers at the Borders Facility included, but are not limited to, the following:

- There is no seating on the patio area designated as being accessible to the disabled;
- There is no accessible seating on the patio area;
- There is no ISA at the strike side of the women's restroom door;
- The signage on the women's restroom door is incorrect;
- The women's restroom door requires more than five (5) pounds of force to operate;
- The toilet tissue dispenser and waste receptacle are obstructions to the use of the side grab bar in the women's restroom;
- The toilet tissue dispenser is mounted too far from the front of the water closet;
- The toilet tissue dispenser protrudes into the clear maneuvering space needed to access the water closet;
- The operable part of the soap dispenser in the women's restroom is too high;
- The pipes underneath the women's restroom lavatory are incompletely wrapped; and,
- There is insufficient strike side clearance when exiting the women's restroom.

These barriers prevented Hubbard from enjoying full and equal access at the Borders Facility.

134. Hubbard was also deterred from visiting the Borders Facility because she knew that the Borders Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Borders Facility because of the future threats of injury created by these barriers.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

135. To the extent known by Hubbard, the barriers at the Dickey's Facility included, but are not limited to, the following:

- There is no ISA at the entrance;
- There is no seating designated as being accessible to the disabled;
- There is no disabled seating;
- There is no directional signage to the restrooms;
- There is no ISA signage mounted at the strike side of the women's restroom;
- The ISA mounted on the women's restroom door is incorrect;
- The women's restroom door requires more than five (5) pounds of force to operate;
- The disposable seat cover dispensers are mounted too high;and,
- There is insufficient strike side clearance when exiting the restroom due to the location of the paper towel dispenser.

These barriers prevented Hubbard from enjoying full and equal access at the Dickey's Facility.

136. Hubbard was also deterred from visiting the Dickey's Facility because she knew that the Dickey's Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Dickey's Facility because of the future threats of injury created by these barriers.

137. To the extent known by Hubbard, the barriers at the Reference 5 Facility included, but are not limited to, the following:

- There is no dressing room identified with an ISA;
- The dressing room door lock is not accessible;
- There is no accessible dressing room;
- There is no handle mounted below the dressing room lock;
- The dressing room is too small;

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1    • The dressing room door swings in, thereby causing insufficient clear
2       floor space; and,
3    • There is no bench in the dressing room.
4    These barriers prevented Hubbard from enjoying full and equal access at
5    the Reference 5 Facility.
6    138.   Hubbard was also deterred from visiting the Reference 5 Facility
7    because she knew that the Reference 5 Facility's goods, services, facilities,
8    privileges, advantages, and accommodations were unavailable to physically
9    disabled patrons (such as herself). She continues to be deterred from visiting the
10   Reference 5 Facility because of the future threats of injury created by these
11   barriers.
12   139.   To the extent known by Hubbard, the barriers at the No Fear
13   Facility included, but are not limited to, the following:
14   • The accessible dressing room is not identified with an ISA;
15   • The dressing room is too small;
16   • The clothing hooks are mounted too high;
17   • There is no space for a wheelchair beside the bench in the dressing
18      room;
19   • The dressing room lock requires twisting, pinching, and/or grasping
20      to operate;
21   • There is no handle mounted below the dressing room lock;
22   • The dressing room door is not self-closing;
23   • The dressing room mirror is not mounted so as to afford a view to a
24      person both sitting a bench and standing up; and,
25   • The dressing room mirror is not 18 inches wide.
26   These barriers prevented Hubbard from enjoying full and equal access at
27   the No Fear Facility.
28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 42

140.   Hubbard was also deterred from visiting the No Fear Facility because she knew that the No Fear Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the No Fear Facility because of the future threats of injury created by these barriers.

141.   To the extent known by Hubbard, the barriers at the Romy Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA;
- The dressing room is too small and does not have the required clear floor space;
- There is no door to the dressing room, only curtains, thereby causing a patron to use manual dexterity in order to close them;
- The clothes hooks in the dressing room are mounted too high;
- There is no mirror in the dressing room;
- The mirror outside of the dressing room is mounted too high; and,
- There is no bench inside the dressing room, only a stool.

These barriers prevented Hubbard from enjoying full and equal access at the Romy Facility.

142.   Hubbard was also deterred from visiting the Romy Facility because she knew that the Romy Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Romy Facility because of the future threats of injury created by these barriers.

143.   To the extent known by Hubbard, the barriers at the Papaya Facility included, but are not limited to, the following:

- The counter is too high with no portion lowered to accommodate a patron in a wheelchair;
- The pay point machine is too high;

- The accessible dressing room is not identified with an ISA;
- The dressing room door swings in, thereby obstructing the required clear floor space;
- The dressing room mirror is not mounted so as to afford a view to a person both sitting a bench and standing up
- The dressing room bench is unfinished and dangerous;
- There is no space for a wheelchair beside the bench in the dressing room; and,
- The dressing room lock requires twisting, pinching, and/or grasping to operate.

These barriers prevented Hubbard from enjoying full and equal access at the Papaya Facility.

144.   Hubbard was also deterred from visiting the Papaya Facility because she knew that the Papaya Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Papaya Facility because of the future threats of injury created by these barriers.

145.   To the extent known by Hubbard, the barriers at the Hot Topic Facility included, but are not limited to, the following:

- The accessible dressing room is not identified with an ISA;
- There is no door to the dressing room, only curtains, thereby causing a patron to use manual dexterity in order to close them;
- The dressing room mirror is not mounted so as to afford a view to a person both sitting a bench and standing up;
- There is no space for a wheelchair beside the bench in the dressing room; and,
- The coat hooks are mounted too high.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1      These barriers prevented Hubbard from enjoying full and equal access at

2  the Hot Topic Facility.

3      146.   Hubbard was also deterred from visiting the Hot Topic Facility

4  because she knew that the Hot Topic Facility's goods, services, facilities,

5  privileges, advantages, and accommodations were unavailable to physically

6  disabled patrons (such as herself). She continues to be deterred from visiting the

7  Hot Topic Facility because of the future threats of injury created by these

8  barriers.

9      147.   To the extent known by Hubbard, the barriers at the PacSun Facility

10  included, but are not limited to, the following:

11      • The counter is too high with no portion lowered to accommodate a

12        patron in a wheelchair;

13      • The pay point machine is too high;

14      • The dressing room door swings into the dressing room, thereby

15        causing insufficient clear floor space;

16      • There is no handle mounted below the lock on the dressing room

17        door; and,

18      • There is no space for a wheelchair beside the bench in the dressing

19        room.

20      These barriers prevented Hubbard from enjoying full and equal access at

21  the PacSun Facility.

22      148.   Hubbard was also deterred from visiting the PacSun Facility

23  because she knew that the PacSun Facility's goods, services, facilities,

24  privileges, advantages, and accommodations were unavailable to physically

25  disabled patrons (such as herself). She continues to be deterred from visiting the

26  PacSun Facility because of the future threats of injury created by these barriers.

27  ///

28  ///

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1    149.   To the extent known by Hubbard, the barriers at the H & M Facility
2  included, but are not limited to, the following:

3    • The dressing room mirror is not mounted so as to afford a view to a
4      person both sitting a bench and standing up;
5    • There is no space for a wheelchair beside the bench in the dressing
6      room;
7    • The dressing room bench is not mounted to the wall;
8    • The hooks in the dressing room are mounted too high;
9    • The dressing room door is not self-closing;
10   • There is no handle below the lock of the dressing room door; and,
11   • There is no ISA identifying the accessible dressing room.

12    These barriers prevented Hubbard from enjoying full and equal access at
13  the H & M Facility.

14    150.   Hubbard was also deterred from visiting the H & M Facility
15  because she knew that the H & M Facility's goods, services, facilities, privileges,
16  advantages, and accommodations were unavailable to physically disabled
17  patrons (such as herself). She continues to be deterred from visiting the H & M
18  Facility because of the future threats of injury created by these barriers.

19    151.   To the extent known by Hubbard, the barriers at the Body Basics
20  Facility included, but are not limited to, the following:

21    • There is no door to the dressing room, only curtains, thereby
22      causing a patron to use manual dexterity in order to close them;
23    • The clothes hooks are mounted too high;
24    • There is no bench in the dressing room; and,
25    • The dressing room mirror is not mounted so as to afford a view to a
26      person both sitting a bench and standing up.

27    These barriers prevented Hubbard from enjoying full and equal access at
28  the Body Basics Facility.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1    152.   Hubbard was also deterred from visiting the Body Basics Facility

2    because she knew that the Body Basics Facility's goods, services, facilities,

3    privileges, advantages, and accommodations were unavailable to physically

4    disabled patrons (such as herself). She continues to be deterred from visiting the

5    Body Basics Facility because of the future threats of injury created by these

6    barriers.

7    153.   Hubbard also encountered barriers at the various facilities which

8    violate state and federal law, but were unrelated to her disability. Nothing within

9    this Complaint, however, should be construed as an allegation that Hubbard is

10   seeking to remove barriers unrelated to her disability.

11   154.   The Plaza Bonita Common Area Defendants knew that these

12   elements and areas of the Plaza Bonita Common Area Facility were inaccessible,

13   violate state and federal law, and interfere with (or deny) access to the physically

14   disabled.   Moreover, the Plaza Bonita Common Area Defendants have the

15   financial resources to remove these barriers from the Plaza Bonita Common Area

16   Facility (without much difficulty or expense), and make the Plaza Bonita

17   Common Area Facility accessible to the physically disabled.   To date, however,

18   the Plaza Bonita Common Area Defendants refuse to either remove those

19   barriers or seek an unreasonable hardship exemption to excuse non-compliance.

20   155.   At all relevant times, the Plaza Bonita Common Area Defendants

21   have possessed and enjoyed sufficient control and authority to modify the Plaza

22   Bonita Common Area Facility to remove impediments to wheelchair access and

23   to comply with the Americans with Disabilities Act Accessibility Guidelines and

24   Title 24 regulations.   The Plaza Bonita Common Area Defendants have not

25   removed such impediments and have not modified the Plaza Bonita Common

26   Area Facility to conform to accessibility standards.   The Plaza Bonita Common

27   Area Defendants has intentionally maintained the Plaza Bonita Common Area

28   Facility in its current condition and have intentionally refrained from altering

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   Plaza Bonita Common Area Facility so that it complies with the accessibility

2   standards.

3        156.   Hubbard further alleges that the (continued) presence of barriers at

4   the Plaza Bonita Common Area Facility is so obvious as to establish the Plaza

5   Bonita Common Area Defendants' discriminatory intent.[1]   On information and

6   belief, Hubbard avers that evidence of the discriminatory intent includes the

7   Plaza Bonita Common Area Defendants' refusal to adhere to relevant building

8   standards; disregard for the building plans and permits issued for the Plaza

9   Bonita Common Area Facility; conscientious decision to the architectural layout

10  (as it currently exists) at the Plaza Bonita Common Area Facility; decision not to

11  remove barriers from the Plaza Bonita Common Area Facility; and allowance

12  that the Plaza Bonita Common Area Facility continues to exist in its non-

13  compliant state.   Hubbard further alleges, on information and belief, that the

14  Plaza Bonita Common Area Defendants are not in the midst of a remodel, and

15  that the barriers present at the Plaza Bonita Common Area Facility are not

16  isolated (or temporary) interruptions in access due to maintenance or repairs.[2]

17       157.   The Corner Bakery Defendants knew that these elements and areas

18  of the Corner Bakery Facility were inaccessible, violate state and federal law,

19  and interfere with (or deny) access to the physically disabled.   Moreover, the

20  Corner Bakery Defendants have the financial resources to remove these barriers

21  from the Corner Bakery Facility (without much difficulty or expense), and make

22  the Corner Bakery Facility accessible to the physically disabled.   To date,

23  however, the Corner Bakery Defendants refuse to either remove those barriers or

24  seek an unreasonable hardship exemption to excuse non-compliance.

25       158.   At all relevant times, the Corner Bakery Defendants have possessed

26  and enjoyed sufficient control and authority to modify the Corner Bakery Facility

27

28  [1]   E.g., *Gunther v.Lin*, 144 Cal.App.4th 223, fn. 6
    [2]   Id.; 28 C.F.R. § 36.211(b)

1  to remove impediments to wheelchair access and to comply with the Americans
2  with Disabilities Act Accessibility Guidelines and Title 24 regulations. The
3  Corner Bakery Defendants have not removed such impediments and have not
4  modified the Corner Bakery Facility to conform to accessibility standards. The
5  Corner Bakery Defendants have intentionally maintained the Corner Bakery
6  Facility in its current condition and has intentionally refrained from altering the
7  Corner Bakery Facility so that it complies with the accessibility standards.

8      159.  Hubbard further alleges that the (continued) presence of barriers at
9  the Corner Bakery Facility is so obvious as to establish the Corner Bakery
10  Defendants' discriminatory intent.[3]  On information and belief, Hubbard avers
11  that evidence of the discriminatory intent includes the Corner Bakery
12  Defendants' refusal to adhere to relevant building standards; disregard for the
13  building plans and permits issued for the Corner Bakery Facility; conscientious
14  decision to the architectural layout (as it currently exists) at the Corner Bakery
15  Facility; decision not to remove barriers from the Corner Bakery Facility; and
16  allowance that the Corner Bakery Facility continues to exist in its non-compliant
17  state. Hubbard further alleges, on information and belief, that the Corner Bakery
18  Defendants are not in the midst of a remodel, and that the barriers present at the
19  Corner Bakery Facility are not isolated (or temporary) interruptions in access due
20  to maintenance or repairs.[4]

21      160.  The Rave Defendants knew that these elements and areas of the
22  Rave Facility were inaccessible, violate state and federal law, and interfere with
23  (or deny) access to the physically disabled. Moreover, the Rave Defendants have
24  the financial resources to remove these barriers from the Rave Facility (without
25  much difficulty or expense), and make the Rave Facility accessible to the
26  physically disabled. To date, however, the Rave Defendants refuse to either

27  _____

28  [3]  E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
    [4]  Id.; 28 C.F.R. § 36.211(b)
    *Hubbard v. Plaza Bonita, LP, et al.*
    Plaintiff's Complaint

1    remove those barriers or seek an unreasonable hardship exemption to excuse

2    non-compliance.

3       161. At all relevant times, the Rave Defendants have possessed and

4    enjoyed sufficient control and authority to modify the Rave Facility to remove

5    impediments to wheelchair access and to comply with the Americans with

6    Disabilities Act Accessibility Guidelines and Title 24 regulations. The Rave

7    Defendants have not removed such impediments and have not modified the Rave

8    Facility to conform to accessibility standards. The Rave Defendants have

9    intentionally maintained the Rave Facility in its current condition and has

10    intentionally refrained from altering Rave Facility so that it complies with the

11    accessibility standards.

12       162. Hubbard further alleges that the (continued) presence of barriers at

13    the Rave Facility is so obvious as to establish the Rave Defendants'

14    discriminatory intent.[5] On information and belief, Hubbard avers that evidence

15    of the discriminatory intent includes the Rave Defendants' refusal to adhere to

16    relevant building standards; disregard for the building plans and permits issued

17    for the Rave Facility; conscientious decision to the architectural layout (as it

18    currently exists) at the Rave Facility; decision not to remove barriers from the

19    Rave Facility; and allowance that the Rave Facility continues to exist in its non-

20    compliant state. Hubbard further alleges, on information and belief, that the

21    Rave Defendants are not in the midst of a remodel, and that the barriers present

22    at the Rave Facility are not isolated (or temporary) interruptions in access due to

23    maintenance or repairs.[6]

24       163. The Finish Line Defendants knew that these elements and areas of

25    the Finish Line Facility were inaccessible, violate state and federal law, and

26    interfere with (or deny) access to the physically disabled. Moreover, the Finish

27

28    [5]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
     [6]   Id.; 28 C.F.R. § 36.211(b)

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 50

1 Line Defendants have the financial resources to remove these barriers from the
2 Finish Line Facility (without much difficulty or expense), and make the Finish
3 Line Facility accessible to the physically disabled.  To date, however, the Finish
4 Line Defendants refuse to either remove those barriers or seek an unreasonable
5 hardship exemption to excuse non-compliance.

6    164.  At all relevant times, the Finish Line Defendants have possessed
7 and enjoyed sufficient control and authority to modify the Finish Line Facility to
8 remove impediments to wheelchair access and to comply with the Americans
9 with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The
10 Finish Line Defendants have not removed such impediments and have not
11 modified the Finish Line Facility to conform to accessibility standards.  The
12 Finish Line Defendants have intentionally maintained the Finish Line Facility in
13 its current condition and has intentionally refrained from altering the Finish Line
14 Facility so that it complies with the accessibility standards.

15    165.  Hubbard further alleges that the (continued) presence of barriers at
16 the Finish Line Facility is so obvious as to establish the Finish Line Defendants'
17 discriminatory intent.[7]  On information and belief, Hubbard avers that evidence
18 of the discriminatory intent includes the Finish Line Defendants' refusal to
19 adhere to relevant building standards; disregard for the building plans and
20 permits issued for the Finish Line Facility; conscientious decision to the
21 architectural layout (as it currently exists) at the Finish Line Facility; decision
22 not to remove barriers from the Finish Line Facility; and allowance that the
23 Finish Line Facility continues to exist in its non-compliant state.  Hubbard
24 further alleges, on information and belief, that the Finish Line Defendants are not
25 in the midst of a remodel, and that the barriers present at the Finish Line Facility

26
27
28

---

[7]    E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 51

1  are not isolated (or temporary) interruptions in access due to maintenance or

2  repairs.[8]

3  166.  The Rave Girl Defendants knew that these elements and areas of the

4  Rave Girl Facility were inaccessible, violate state and federal law, and interfere

5  with (or deny) access to the physically disabled.  Moreover, the Rave Girl

6  Defendants have the financial resources to remove these barriers from the Rave

7  Girl Facility (without much difficulty or expense), and make the Rave Girl

8  Facility accessible to the physically disabled.  To date, however, the Rave Girl

9  Defendants refuse to either remove those barriers or seek an unreasonable

10  hardship exemption to excuse non-compliance.

11  167.  At all relevant times, the Rave Girl Defendants have possessed and

12  enjoyed sufficient control and authority to modify the Rave Girl Facility to

13  remove impediments to wheelchair access and to comply with the Americans

14  with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The

15  Rave Girl Defendants have not removed such impediments and have not

16  modified the Rave Girl Facility to conform to accessibility standards.  The Rave

17  Girl Defendants have intentionally maintained the Rave Girl Facility in its

18  current condition and has intentionally refrained from altering the Rave Girl

19  Facility Area so that it complies with the accessibility standards.

20  168.  Hubbard further alleges that the (continued) presence of barriers at

21  the Rave Girl Facility is so obvious as to establish the Rave Girl Defendants'

22  discriminatory intent.[9]  On information and belief, Hubbard avers that evidence

23  of the discriminatory intent includes the Rave Girl Defendants' refusal to adhere

24  to relevant building standards; disregard for the building plans and permits

25  issued for the Rave Girl Facility; conscientious decision to the architectural

26  layout (as it currently exists) at the Rave Girl Facility; decision not to remove

27

28  [8]  Id.; 28 C.F.R. § 36.211(b)
[9]  E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 52

barriers from the Rave Girl Facility; and allowance that the Rave Girl Facility continues to exist in its non-compliant state. Hubbard further alleges, on information and belief, that the Rave Girl Defendants are not in the midst of a remodel, and that the barriers present at the Rave Girl Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.[10]

169. The Vans Defendants knew that these elements and areas of the Vans Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, the Vans Defendants have the financial resources to remove these barriers from the Vans Facility (without much difficulty or expense), and make the Vans Facility accessible to the physically disabled. To date, however, the Vans Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

170. At all relevant times, the Vans Defendants have possessed and enjoyed sufficient control and authority to modify the Vans Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. The Vans Defendants have not removed such impediments and have not modified the Vans Facility to conform to accessibility standards. The Vans Defendants have intentionally maintained the Vans Facility in its current condition and has intentionally refrained from altering the Vans Facility so that it complies with the accessibility standards.

171. Hubbard further alleges that the (continued) presence of barriers at the Vans Facility is so obvious as to establish the Vans Defendants' discriminatory intent.[11] On information and belief, Hubbard avers that evidence of the discriminatory intent includes the Vans Defendants' refusal to adhere to

---

[10] Id.; 28 C.F.R. § 36.211(b)

[11] E.g., *Gunther v .Lin*, 144 Cal.App.4th 223, fn. 6

*Hubbard v. Plaza Bonita, LP, et al.*

Plaintiff's Complaint

Page 53

1  relevant building standards; disregard for the building plans and permits issued

2  for the Vans Facility; conscientious decision to the architectural layout (as it

3  currently exists) at the Vans Facility; decision not to remove barriers from the

4  Vans Facility; and allowance that the Vans Facility continues to exist in its non-

5  compliant state.   Hubbard further alleges, on information and belief, that the

6  Vans Defendants are not in the midst of a remodel, and that the barriers present

7  at the Vans Facility are not isolated (or temporary) interruptions in access due to

8  maintenance or repairs.[12]

9      172.   The House of Flava Defendants knew that these elements and areas

10  of the House of Flava Facility were inaccessible, violate state and federal law,

11  and interfere with (or deny) access to the physically disabled.   Moreover, the

12  House of Flava Defendants have the financial resources to remove these barriers

13  from the House of Flava Facility (without much difficulty or expense), and make

14  the House of Flava Facility accessible to the physically disabled.   To date,

15  however, the House of Flava Defendants refuse to either remove those barriers or

16  seek an unreasonable hardship exemption to excuse non-compliance.

17      173.   At all relevant times, the House of Flava Defendants have possessed

18  and enjoyed sufficient control and authority to modify the House of Flava

19  Facility to remove impediments to wheelchair access and to comply with the

20  Americans with Disabilities Act Accessibility Guidelines and Title 24

21  regulations.   The House of Flava Defendants have not removed such

22  impediments and have not modified the House of Flava Facility to conform to

23  accessibility standards.   The House of Flava Defendants have intentionally

24  maintained the House of Flava Facility in its current condition and has

25  intentionally refrained from altering the House of Flava Facility so that it

26  complies with the accessibility standards.

27

28

[12]   Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 54

174. Hubbard further alleges that the (continued) presence of barriers at the House of Flava Facility is so obvious as to establish the House of Flava Defendants' discriminatory intent.[13]  On information and belief, Hubbard avers that evidence of the discriminatory intent includes the House of Flava Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the House of Flava Facility; conscientious decision to the architectural layout (as it currently exists) at the House of Flava Facility; decision not to remove barriers from the House of Flava Facility; and allowance that the House of Flava Facility continues to exist in its non-compliant state.  Hubbard further alleges, on information and belief, that the House of Flava Defendants are not in the midst of a remodel, and that the barriers present at the House of Flava Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.[14]

175. The Johnny Rockets Defendants knew that these elements and areas of the Johnny Rockets Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, the Johnny Rockets Defendants have the financial resources to remove these barriers from the Johnny Rockets Facility (without much difficulty or expense), and make the Johnny Rockets Facility accessible to the physically disabled.  To date, however, the Johnny Rockets Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

176. At all relevant times, the Johnny Rockets Defendants have possessed and enjoyed sufficient control and authority to modify the Johnny Rockets Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The Johnny Rockets Defendants have not removed such

---

[13]  E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[14]  Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   impediments and have not modified the Johnny Rockets Facility to conform to

2   accessibility standards.   The Johnny Rockets Defendants have intentionally

3   maintained the Johnny Rockets Facility in its current condition and has

4   intentionally refrained from altering the Johnny Rockets Facility so that it

5   complies with the accessibility standards.

6       177.   Hubbard further alleges that the (continued) presence of barriers at

7   the Johnny Rockets Facility is so obvious as to establish the Johnny Rockets

8   Defendants' discriminatory intent.[15]   On information and belief, Hubbard avers

9   that evidence of the discriminatory intent includes the Johnny Rockets

10  Defendants' refusal to adhere to relevant building standards; disregard for the

11  building plans and permits issued for the Johnny Rockets Facility; conscientious

12  decision to the architectural layout (as it currently exists) at the Johnny Rockets

13  Facility; decision not to remove barriers from the Johnny Rockets Facility; and

14  allowance that the Johnny Rockets Facility continues to exist in its non-

15  compliant state.   Hubbard further alleges, on information and belief, that the

16  Johnny Rockets Defendants are not in the midst of a remodel, and that the

17  barriers present at the Johnny Rockets Facility are not isolated (or temporary)

18  interruptions in access due to maintenance or repairs.[16]

19      178.   The Applebee's Defendants knew that these elements and areas of

20  the Applebee's Facility were inaccessible, violate state and federal law, and

21  interfere with (or deny) access to the physically disabled.   Moreover, the

22  Applebee's Defendants have the financial resources to remove these barriers

23  from the Applebee's Facility (without much difficulty or expense), and make the

24  Applebee's Facility accessible to the physically disabled.   To date, however, the

25  Applebee's Defendants refuse to either remove those barriers or seek an

26  unreasonable hardship exemption to excuse non-compliance.

27  _____

28  [15]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
    [16]   Id.; 28 C.F.R. § 36.211(b)
    *Hubbard v. Plaza Bonita, LP, et al.*
    Plaintiff's Complaint

179. At all relevant times, the Applebee's Defendants have possessed and enjoyed sufficient control and authority to modify the Applebee's Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. The Applebee's Defendants have not removed such impediments and have not modified the Applebee's Facility to conform to accessibility standards. The Applebee's Defendants have intentionally maintained the Applebee's Facility in its current condition and has intentionally refrained from altering the Applebee's Facility so that it complies with the accessibility standards.

180. Hubbard further alleges that the (continued) presence of barriers at the Applebee's Facility is so obvious as to establish the Applebee's Defendants' discriminatory intent.[17] On information and belief, Hubbard avers that evidence of the discriminatory intent includes the Applebee's Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Applebee's Facility; conscientious decision to the architectural layout (as it currently exists) at the Applebee's Facility; decision not to remove barriers from the Applebee's Facility; and allowance that the Applebee's Facility continues to exist in its non-compliant state. Hubbard further alleges, on information and belief, that the Applebee's Defendants are not in the midst of a remodel, and that the barriers present at the Applebee's Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.[18]

181. The Motherhood Defendants knew that these elements and areas of the Motherhood Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, the Motherhood Defendants have the financial resources to remove these barriers

---

[17] E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[18] Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

from the Motherhood Facility (without much difficulty or expense), and make the Motherhood Facility accessible to the physically disabled.  To date, however, the Motherhood Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

182.  At all relevant times, the Motherhood Defendants have possessed and enjoyed sufficient control and authority to modify the Motherhood Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The Motherhood Defendants have not removed such impediments and have not modified the Motherhood Facility to conform to accessibility standards.  The Motherhood Defendants have intentionally maintained the Motherhood Facility in its current condition and has intentionally refrained from altering the Motherhood Facility so that it complies with the accessibility standards.

183.  Hubbard further alleges that the (continued) presence of barriers at the Motherhood Facility is so obvious as to establish the Motherhood Defendants' discriminatory intent.[19]  On information and belief, Hubbard avers that evidence of the discriminatory intent includes the Motherhood Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Motherhood Facility; conscientious decision to the architectural layout (as it currently exists) at the Motherhood Facility; decision not to remove barriers from the Motherhood Facility; and allowance that the Motherhood Facility continues to exist in its non-compliant state.  Hubbard further alleges, on information and belief, that the Motherhood Defendants are not in the midst of a remodel, and that the barriers present at the Motherhood Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.[20]

---

[19]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[20]   Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

184. The Hollister Defendants knew that these elements and areas of the Hollister Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, the Hollister Defendants have the financial resources to remove these barriers from the Hollister Facility (without much difficulty or expense), and make the Hollister Facility accessible to the physically disabled. To date, however, the Hollister Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

185. At all relevant times, the Hollister Defendants have possessed and enjoyed sufficient control and authority to modify the Hollister Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. The Hollister Defendants have not removed such impediments and have not modified the Hollister Facility to conform to accessibility standards. The Hollister Defendants have intentionally maintained the Hollister Facility in its current condition and has intentionally refrained from altering the Hollister Facility so that it complies with the accessibility standards.

186. Hubbard further alleges that the (continued) presence of barriers at the Hollister Facility is so obvious as to establish the Hollister Defendants' discriminatory intent.[21] On information and belief, Hubbard avers that evidence of the discriminatory intent includes the Hollister Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Hollister Facility; conscientious decision to the architectural layout (as it currently exists) at the Hollister Facility; decision not to remove barriers from the Hollister Facility; and allowance that the Hollister Facility continues to exist in its non-compliant state. Hubbard further alleges, on information and

---

[21]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  belief, that the Hollister Defendants are not in the midst of a remodel, and that
2  the barriers present at the Hollister Facility are not isolated (or temporary)
3  interruptions in access due to maintenance or repairs.[22]

4     187.   The Forever 21 Defendants knew that these elements and areas of
5  the Forever 21 Facility were inaccessible, violate state and federal law, and
6  interfere with (or deny) access to the physically disabled.  Moreover, the Forever
7  21 Defendants have the financial resources to remove these barriers from the
8  Forever 21 Facility (without much difficulty or expense), and make the Forever
9  21 Facility accessible to the physically disabled.  To date, however, the Forever
10  21 Defendants refuse to either remove those barriers or seek an unreasonable
11  hardship exemption to excuse non-compliance.

12     188.   At all relevant times, the Forever 21 Defendants have possessed and
13  enjoyed sufficient control and authority to modify the Forever 21 Facility to
14  remove impediments to wheelchair access and to comply with the Americans
15  with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The
16  Forever 21 Defendants have not removed such impediments and have not
17  modified the Forever 21 Facility to conform to accessibility standards.   The
18  Forever 21 Defendants have intentionally maintained the Forever 21 Facility in
19  its current condition and has intentionally refrained from altering the Forever 21
20  Facility so that it complies with the accessibility standards.

21     189.   Hubbard further alleges that the (continued) presence of barriers at
22  the Forever 21 Facility is so obvious as to establish the Forever 21 Defendants'
23  discriminatory intent.[23]  On information and belief, Hubbard avers that evidence
24  of the discriminatory intent includes the Forever 21 Defendants' refusal to
25  adhere to relevant building standards; disregard for the building plans and
26  permits issued for the Forever 21 Facility; conscientious decision to the

27

28  [22]  Id.; 28 C.F.R. § 36.211(b)
    [23]  E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6

1    architectural layout (as it currently exists) at the Forever 21 Facility; decision not

2    to remove barriers from the Forever 21 Facility; and allowance that the Forever

3    21 Facility continues to exist in its non-compliant state.  Hubbard further alleges,

4    on information and belief, that the Forever 21 Defendants are not in the midst of

5    a remodel, and that the barriers present at the Forever 21 Facility are not isolated

6    (or temporary) interruptions in access due to maintenance or repairs.[24]

7         190.  The New York & Co. Defendants knew that these elements and

8    areas of the New York & Co. Facility were inaccessible, violate state and federal

9    law, and interfere with (or deny) access to the physically disabled.  Moreover,

10    the New York & Co. Defendants have the financial resources to remove these

11    barriers from the New York & Co. Facility (without much difficulty or expense),

12    and make the New York & Co. Facility accessible to the physically disabled.  To

13    date, however, the New York & Co. Defendants refuse to either remove those

14    barriers or seek an unreasonable hardship exemption to excuse non-compliance.

15         191.  At all relevant times, the New York & Co. Defendants have

16    possessed and enjoyed sufficient control and authority to modify the New York

17    & Co. Facility to remove impediments to wheelchair access and to comply with

18    the Americans with Disabilities Act Accessibility Guidelines and Title 24

19    regulations.   The New York & Co. Defendants have not removed such

20    impediments and have not modified the New York & Co. Facility to conform to

21    accessibility standards.   The New York & Co. Defendants have intentionally

22    maintained the New York & Co. Facility in its current condition and has

23    intentionally refrained from altering the New York & Co. Facility so that it

24    complies with the accessibility standards.

25         192.  Hubbard further alleges that the (continued) presence of barriers at

26    the New York & Co. Facility is so obvious as to establish the New York & Co.

27

28

[24]   Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  Defendants' discriminatory intent.[25]   On information and belief, Hubbard avers
2  that evidence of the discriminatory intent includes the New York & Co.
3  Defendants' refusal to adhere to relevant building standards; disregard for the
4  building plans and permits issued for the New York & Co. Facility;
5  conscientious decision to the architectural layout (as it currently exists) at the
6  New York & Co. Facility; decision not to remove barriers from the New York &
7  Co. Facility; and allowance that the New York & Co. Facility continues to exist
8  in its non-compliant state.   Hubbard further alleges, on information and belief,
9  that the New York & Co. Defendants are not in the midst of a remodel, and that
10  the barriers present at the New York & Co. Facility are not isolated (or
11  temporary) interruptions in access due to maintenance or repairs.[26]

12      193.   The American Eagle Defendants knew that these elements and areas
13  of the American Eagle Facility were inaccessible, violate state and federal law,
14  and interfere with (or deny) access to the physically disabled.   Moreover, the
15  American Eagle Defendants have the financial resources to remove these barriers
16  from the American Eagle Facility (without much difficulty or expense), and
17  make the American Eagle Facility accessible to the physically disabled.   To date,
18  however, the American Eagle Defendants refuse to either remove those barriers
19  or seek an unreasonable hardship exemption to excuse non-compliance.

20      194.   At all relevant times, the American Eagle Defendants have
21  possessed and enjoyed sufficient control and authority to modify the American
22  Eagle Facility to remove impediments to wheelchair access and to comply with
23  the Americans with Disabilities Act Accessibility Guidelines and Title 24
24  regulations.   The American Eagle Defendants have not removed such
25  impediments and have not modified the American Eagle Facility to conform to
26  accessibility standards.   The American Eagle Defendants have intentionally

27

28
[25]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[26]   Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   maintained the American Eagle Facility in its current condition and has

2   intentionally refrained from altering the American Eagle Facility so that it

3   complies with the accessibility standards.

4       195.   Hubbard further alleges that the (continued) presence of barriers at

5   the American Eagle Facility is so obvious as to establish the American Eagle

6   Defendants' discriminatory intent.[27]  On information and belief, Hubbard avers

7   that evidence of the discriminatory intent includes the American Eagle

8   Defendants' refusal to adhere to relevant building standards; disregard for the

9   building plans and permits issued for the American Eagle Facility; conscientious

10  decision to the architectural layout (as it currently exists) at the American Eagle

11  Facility; decision not to remove barriers from the American Eagle Facility; and

12  allowance that the American Eagle Facility continues to exist in its non-

13  compliant state.   Hubbard further alleges, on information and belief, that the

14  American Eagle Defendants are not in the midst of a remodel, and that the

15  barriers present at the American Eagle Facility are not isolated (or temporary)

16  interruptions in access due to maintenance or repairs.[28]

17      196.   The Sun Diego Defendants knew that these elements and areas of

18  the Sun Diego Facility were inaccessible, violate state and federal law, and

19  interfere with (or deny) access to the physically disabled.   Moreover, the Sun

20  Diego Defendants have the financial resources to remove these barriers from the

21  Sun Diego Facility (without much difficulty or expense), and make the Sun

22  Diego Facility accessible to the physically disabled.   To date, however, the Sun

23  Diego Defendants refuse to either remove those barriers or seek an unreasonable

24  hardship exemption to excuse non-compliance.

25      197.   At all relevant times, the Sun Diego Defendants have possessed and

26  enjoyed sufficient control and authority to modify the Sun Diego Facility to

27

28
[27]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[28]   Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1 remove impediments to wheelchair access and to comply with the Americans

2 with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The Sun

3 Diego Defendants have not removed such impediments and have not modified

4 the Sun Diego Facility to conform to accessibility standards.  The Sun Diego

5 Defendants have intentionally maintained the Sun Diego Facility in its current

6 condition and has intentionally refrained from altering the Sun Diego Facility so

7 that it complies with the accessibility standards.

8      198.  Hubbard further alleges that the (continued) presence of barriers at

9 the Sun Diego Facility is so obvious as to establish the Sun Diego Defendants'

10 discriminatory intent.[29]  On information and belief, Hubbard avers that evidence

11 of the discriminatory intent includes the Sun Diego Defendants' refusal to adhere

12 to relevant building standards; disregard for the building plans and permits

13 issued for the Sun Diego Facility; conscientious decision to the architectural

14 layout (as it currently exists) at the Sun Diego Facility; decision not to remove

15 barriers from the Sun Diego Facility; and allowance that the Sun Diego Facility

16 continues to exist in its non-compliant state.  Hubbard further alleges, on

17 information and belief, that the Sun Diego Defendants are not in the midst of a

18 remodel, and that the barriers present at the Sun Diego Facility are not isolated

19 (or temporary) interruptions in access due to maintenance or repairs.[30]

20      199.  The Rox Fox Defendants knew that these elements and areas of the

21 Rox Fox Facility were inaccessible, violate state and federal law, and interfere

22 with (or deny) access to the physically disabled.  Moreover, the Rox Fox

23 Defendants have the financial resources to remove these barriers from the Rox

24 Fox Facility (without much difficulty or expense), and make the Rox Fox

25 Facility accessible to the physically disabled.  To date, however, the Rox Fox

26

27

28

---

[29]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[30]   Id.; 28 C.F.R. § 36.211(b)

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   Defendants refuse to either remove those barriers or seek an unreasonable
2   hardship exemption to excuse non-compliance.

3        200.   At all relevant times, the Rox Fox Defendants have possessed and
4   enjoyed sufficient control and authority to modify the Rox Fox Facility to
5   remove impediments to wheelchair access and to comply with the Americans
6   with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The Rox
7   Fox Defendants have not removed such impediments and have not modified the
8   Rox Fox Facility to conform to accessibility standards.  The Rox Fox Defendants
9   have intentionally maintained the Rox Fox Facility in its current condition and
10  has intentionally refrained from altering the Rox Fox Facility so that it complies
11  with the accessibility standards.

12       201.   Hubbard further alleges that the (continued) presence of barriers at
13  the Rox Fox Facility is so obvious as to establish the Rox Fox Defendants'
14  discriminatory intent.[31]  On information and belief, Hubbard avers that evidence
15  of the discriminatory intent includes the Rox Fox Defendants' refusal to adhere
16  to relevant building standards; disregard for the building plans and permits
17  issued for the Rox Fox Facility; conscientious decision to the architectural layout
18  (as it currently exists) at the Rox Fox Facility; decision not to remove barriers
19  from the Rox Fox Facility; and allowance that the Rox Fox Facility continues to
20  exist in its non-compliant state.   Hubbard further alleges, on information and
21  belief, that the Rox Fox Defendants are not in the midst of a remodel, and that
22  the barriers present at the Rox Fox Facility are not isolated (or temporary)
23  interruptions in access due to maintenance or repairs.[32]

24       202.   The Torrid Defendants knew that these elements and areas of the
25  Torrid Facility were inaccessible, violate state and federal law, and interfere with
26  (or deny) access to the physically disabled.  Moreover, the Torrid Defendants

27

28

---

[31]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[32]   Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   have the financial resources to remove these barriers from the Torrid Facility
2   (without much difficulty or expense), and make the Torrid Facility accessible to
3   the physically disabled.  To date, however, the Torrid Defendants refuse to either
4   remove those barriers or seek an unreasonable hardship exemption to excuse
5   non-compliance.

6       203.  At all relevant times, the Torrid Defendants have possessed and
7   enjoyed sufficient control and authority to modify the Torrid Facility to remove
8   impediments to wheelchair access and to comply with the Americans with
9   Disabilities Act Accessibility Guidelines and Title 24 regulations.  The Torrid
10  Defendants have not removed such impediments and have not modified the
11  Torrid Facility to conform to accessibility standards.  The Torrid Defendants
12  have intentionally maintained the Torrid Facility in its current condition and has
13  intentionally refrained from altering the Torrid Facility so that it complies with
14  the accessibility standards.

15      204.  Hubbard further alleges that the (continued) presence of barriers at
16  the Torrid Facility is so obvious as to establish the Torrid Defendants'
17  discriminatory intent.[33]  On information and belief, Hubbard avers that evidence
18  of the discriminatory intent includes the Torrid Defendants' refusal to adhere to
19  relevant building standards; disregard for the building plans and permits issued
20  for the Torrid Facility; conscientious decision to the architectural layout (as it
21  currently exists) at the Torrid Facility; decision not to remove barriers from the
22  Torrid Facility; and allowance that the Torrid Facility continues to exist in its
23  non-compliant state.  Hubbard further alleges, on information and belief, that the
24  Torrid Defendants are not in the midst of a remodel, and that the barriers present
25  at the Torrid Facility are not isolated (or temporary) interruptions in access due
26  to maintenance or repairs.

27

28

---

[33]  E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1    205.   The Wet Seal Defendants knew that these elements and areas of the

2    Wet Seal Facility were inaccessible, violate state and federal law, and interfere

3    with (or deny) access to the physically disabled.   Moreover, the Wet Seal

4    Defendants have the financial resources to remove these barriers from the Wet

5    Seal Facility (without much difficulty or expense), and make the Wet Seal

6    Facility accessible to the physically disabled.   To date, however, the Wet Seal

7    Defendants refuse to either remove those barriers or seek an unreasonable

8    hardship exemption to excuse non-compliance.

9    206.   At all relevant times, the Wet Seal Defendants have possessed and

10   enjoyed sufficient control and authority to modify the Wet Seal Facility to

11   remove impediments to wheelchair access and to comply with the Americans

12   with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The Wet

13   Seal Defendants have not removed such impediments and have not modified the

14   Wet Seal Facility to conform to accessibility standards.   The Wet Seal

15   Defendants have intentionally maintained the Wet Seal Facility in its current

16   condition and has intentionally refrained from altering the Wet Seal Facility so

17   that it complies with the accessibility standards.

18   207.   Hubbard further alleges that the (continued) presence of barriers at

19   the Wet Seal Facility is so obvious as to establish the Wet Seal Defendants'

20   discriminatory intent.[34]   On information and belief, Hubbard avers that evidence

21   of the discriminatory intent includes the Wet Seal Defendants' refusal to adhere

22   to relevant building standards; disregard for the building plans and permits

23   issued for the Wet Seal Facility; conscientious decision to the architectural

24   layout (as it currently exists) at the Wet Seal Facility; decision not to remove

25   barriers from the Wet Seal Facility; and allowance that the Wet Seal Facility

26   continues to exist in its non-compliant state.   Hubbard further alleges, on

27

28   [34]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
     *Hubbard v. Plaza Bonita, LP, et al.*
     Plaintiff's Complaint

                              Page 67

1  information and belief, that the Wet Seal Defendants are not in the midst of a

2  remodel, and that the barriers present at the Wet Seal Facility are not isolated (or

3  temporary) interruptions in access due to maintenance or repairs.

4      208.   The Victoria's Secret Defendants knew that these elements and

5  areas of the Victoria's Secret Facility were inaccessible, violate state and federal

6  law, and interfere with (or deny) access to the physically disabled.  Moreover,

7  the Victoria's Secret Defendants have the financial resources to remove these

8  barriers from the Victoria's Secret Facility (without much difficulty or expense),

9  and make the Victoria's Secret Facility accessible to the physically disabled.  To

10  date, however, the Victoria's Secret Defendants refuse to either remove those

11  barriers or seek an unreasonable hardship exemption to excuse non-compliance.

12      209.   At all relevant times, the Victoria's Secret Defendants have

13  possessed and enjoyed sufficient control and authority to modify the Victoria's

14  Secret Facility to remove impediments to wheelchair access and to comply with

15  the Americans with Disabilities Act Accessibility Guidelines and Title 24

16  regulations.    The Victoria's Secret Defendants have not removed such

17  impediments and have not modified the Victoria's Secret Facility to conform to

18  accessibility standards.   The Victoria's Secret Defendants have intentionally

19  maintained the Victoria's Secret Facility in its current condition and has

20  intentionally refrained from altering the Victoria's Secret Facility so that it

21  complies with the accessibility standards.

22      210.   Hubbard further alleges that the (continued) presence of barriers at

23  the Victoria's Secret Facility is so obvious as to establish the Victoria's Secret

24  Defendants' discriminatory intent.[35]  On information and belief, Hubbard avers

25  that evidence of the discriminatory intent includes the Victoria's Secret

26  Defendants' refusal to adhere to relevant building standards; disregard for the

27

28

---

[35]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  building plans and permits issued for the Victoria's Secret Facility; conscientious
2  decision to the architectural layout (as it currently exists) at the Victoria's Secret
3  Facility; decision not to remove barriers from the Victoria's Secret Facility; and
4  allowance that the Victoria's Secret Facility continues to exist in its non-
5  compliant state.   Hubbard further alleges, on information and belief, that the
6  Victoria's Secret Defendants are not in the midst of a remodel, and that the
7  barriers present at the Victoria's Secret Facility are not isolated (or temporary)
8  interruptions in access due to maintenance or repairs.

9      211.  The Vibe Defendants knew that these elements and areas of the
10  Vibe Facility were inaccessible, violate state and federal law, and interfere with
11  (or deny) access to the physically disabled.  Moreover, the Vibe Defendants have
12  the financial resources to remove these barriers from the Vibe Facility (without
13  much difficulty or expense), and make the Vibe Facility accessible to the
14  physically disabled.   To date, however, the Vibe Defendants refuse to either
15  remove those barriers or seek an unreasonable hardship exemption to excuse
16  non-compliance.

17      212.  At all relevant times, the Vibe Defendants have possessed and
18  enjoyed sufficient control and authority to modify the Vibe Facility to remove
19  impediments to wheelchair access and to comply with the Americans with
20  Disabilities Act Accessibility Guidelines and Title 24 regulations.  The Vibe
21  Defendants have not removed such impediments and have not modified the Vibe
22  Facility to conform to accessibility standards.   The Vibe Defendants have
23  intentionally maintained the Vibe Facility in its current condition and has
24  intentionally refrained from altering the Vibe Facility so that it complies with the
25  accessibility standards.

26      213.  Hubbard further alleges that the (continued) presence of barriers at
27  the  Vibe  Facility  is  so  obvious  as  to  establish  the  Vibe  Defendants'
28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  discriminatory intent.[36]   On information and belief, Hubbard avers that evidence
2  of the discriminatory intent includes the Vibe Defendants' refusal to adhere to
3  relevant building standards; disregard for the building plans and permits issued
4  for the Vibe Facility; conscientious decision to the architectural layout (as it
5  currently exists) at the Vibe Facility; decision not to remove barriers from the
6  Vibe Facility; and allowance that the Vibe Facility continues to exist in its non-
7  compliant state.   Hubbard further alleges, on information and belief, that the
8  Vibe Defendants are not in the midst of a remodel, and that the barriers present at
9  the Vibe Facility are not isolated (or temporary) interruptions in access due to
10  maintenance or repairs.

11      214.   The Fredericks Defendants knew that these elements and areas of
12  the Fredericks Facility were inaccessible, violate state and federal law, and
13  interfere with (or deny) access to the physically disabled.   Moreover, the
14  Fredericks Defendants have the financial resources to remove these barriers from
15  the Fredericks Facility (without much difficulty or expense), and make the
16  Fredericks Facility accessible to the physically disabled.   To date, however, the
17  Fredericks Defendants refuse to either remove those barriers or seek an
18  unreasonable hardship exemption to excuse non-compliance.

19      215.   At all relevant times, the Fredericks Defendants have possessed and
20  enjoyed sufficient control and authority to modify the Fredericks Facility to
21  remove impediments to wheelchair access and to comply with the Americans
22  with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The
23  Fredericks Defendants have not removed such impediments and have not
24  modified the Fredericks Facility to conform to accessibility standards.   The
25  Fredericks Defendants have intentionally maintained the Fredericks Facility in
26
27
28

---

[36]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  its current condition and has intentionally refrained from altering the Fredericks

2  Facility so that it complies with the accessibility standards.

3      216.   Hubbard further alleges that the (continued) presence of barriers at

4  the Fredericks Facility is so obvious as to establish the Fredericks Defendants'

5  discriminatory intent.[37]   On information and belief, Hubbard avers that evidence

6  of the discriminatory intent includes the Fredericks Defendants' refusal to adhere

7  to relevant building standards; disregard for the building plans and permits

8  issued for the Fredericks Facility; conscientious decision to the architectural

9  layout (as it currently exists) at the Fredericks Facility; decision not to remove

10  barriers from the Fredericks Facility; and allowance that the Fredericks Facility

11  continues to exist in its non-compliant state.   Hubbard further alleges, on

12  information and belief, that the Fredericks Defendants are not in the midst of a

13  remodel, and that the barriers present at the Fredericks Facility are not isolated

14  (or temporary) interruptions in access due to maintenance or repairs.

15      217.   The Causal Time Defendants knew that these elements and areas of

16  the Causal Time Facility were inaccessible, violate state and federal law, and

17  interfere with (or deny) access to the physically disabled.  Moreover, the Causal

18  Time Defendants have the financial resources to remove these barriers from the

19  Causal Time Facility (without much difficulty or expense), and make the Causal

20  Time Facility accessible to the physically disabled.  To date, however, the Causal

21  Time Defendants refuse to either remove those barriers or seek an unreasonable

22  hardship exemption to excuse non-compliance.

23      218.   At all relevant times, the Causal Time Defendants have possessed

24  and enjoyed sufficient control and authority to modify the Causal Time Facility

25  to remove impediments to wheelchair access and to comply with the Americans

26  with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The

27

28
---
[37]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Causal Time Defendants have not removed such impediments and have not modified the Causal Time Facility to conform to accessibility standards. The Causal Time Defendants have intentionally maintained the Causal Time Facility in its current condition and has intentionally refrained from altering the Casual Time Facility so that it complies with the accessibility standards.

219.   Hubbard further alleges that the (continued) presence of barriers at the Causal Time Facility is so obvious as to establish the Causal Time Defendants' discriminatory intent.[38]   On information and belief, Hubbard avers that evidence of the discriminatory intent includes the Causal Time Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Causal Time Facility; conscientious decision to the architectural layout (as it currently exists) at the Causal Time Facility; decision not to remove barriers from the Causal Time Facility; and allowance that the Causal Time Facility continues to exist in its non-compliant state.   Hubbard further alleges, on information and belief, that the Causal Time Defendants are not in the midst of a remodel, and that the barriers present at the Causal Time Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

220.   The Charlotte Russe Defendants knew that these elements and areas of the Charlotte Russe Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.   Moreover, the Charlotte Russe Defendants have the financial resources to remove these barriers from the Charlotte Russe Facility (without much difficulty or expense), and make the Charlotte Russe Facility accessible to the physically disabled.   To date, however, the Charlotte Russe Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

---

[38]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 72

221. At all relevant times, the Charlotte Russe Defendants have possessed and enjoyed sufficient control and authority to modify the Charlotte Russe Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The Charlotte Russe Defendants have not removed such impediments and have not modified the Charlotte Russe Facility to conform to accessibility standards.   The Charlotte Russe Defendants have intentionally maintained the Charlotte Russe Facility in its current condition and has intentionally refrained from altering the Charlotte Russe Facility so that it complies with the accessibility standards.

222.  Hubbard further alleges that the (continued) presence of barriers at the Charlotte Russe Facility is so obvious as to establish the Charlotte Russe Defendants' discriminatory intent.[39]  On information and belief, Hubbard avers that evidence of the discriminatory intent includes the Charlotte Russe Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Charlotte Russe Facility; conscientious decision to the architectural layout (as it currently exists) at the Charlotte Russe Facility; decision not to remove barriers from the Charlotte Russe Facility; and allowance that the Charlotte Russe Facility continues to exist in its non-compliant state.   Hubbard further alleges, on information and belief, that the Charlotte Russe Defendants are not in the midst of a remodel, and that the barriers present at the Charlotte Russe Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

223.  The Revolution Defendants knew that these elements and areas of the Revolution Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.   Moreover, the

---

[39]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  Revolution Defendants have the financial resources to remove these barriers
2  from the Revolution Facility (without much difficulty or expense), and make the
3  Revolution Facility accessible to the physically disabled.  To date, however, the
4  Revolution Defendants refuse to either remove those barriers or seek an
5  unreasonable hardship exemption to excuse non-compliance.

6      224.  At all relevant times, the Revolution Defendants have possessed and
7  enjoyed sufficient control and authority to modify the Revolution Facility to
8  remove impediments to wheelchair access and to comply with the Americans
9  with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The
10 Revolution Defendants have not removed such impediments and have not
11 modified the Revolution Facility to conform to accessibility standards.  The
12 Revolution Defendants have intentionally maintained the Revolution Facility in
13 its current condition and has intentionally refrained from altering the Revolution
14 Facility so that it complies with the accessibility standards.

15     225.  Hubbard further alleges that the (continued) presence of barriers at
16 the Revolution Facility is so obvious as to establish the Revolution Defendants'
17 discriminatory intent.[40]  On information and belief, Hubbard avers that evidence
18 of the discriminatory intent includes the Revolution Defendants' refusal to
19 adhere to relevant building standards; disregard for the building plans and
20 permits issued for the Revolution Facility; conscientious decision to the
21 architectural layout (as it currently exists) at the Revolution Facility; decision not
22 to remove barriers from the Revolution Facility; and allowance that the
23 Revolution Facility continues to exist in its non-compliant state.  Hubbard
24 further alleges, on information and belief, that the Revolution Defendants are not
25 in the midst of a remodel, and that the barriers present at the Revolution Facility

26

27

28

---

[40]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   are not isolated (or temporary) interruptions in access due to maintenance or
2   repairs.

3       226.   The Express Defendants knew that these elements and areas of the
4   Express Facility were inaccessible, violate state and federal law, and interfere
5   with (or deny) access to the physically disabled.   Moreover, the Express
6   Defendants have the financial resources to remove these barriers from the
7   Express Facility (without much difficulty or expense), and make the Express
8   Facility accessible to the physically disabled.   To date, however, the Express
9   Defendants refuse to either remove those barriers or seek an unreasonable
10  hardship exemption to excuse non-compliance.

11      227.   At all relevant times, the Express Defendants have possessed and
12  enjoyed sufficient control and authority to modify the Express Facility to remove
13  impediments to wheelchair access and to comply with the Americans with
14  Disabilities Act Accessibility Guidelines and Title 24 regulations.   The Express
15  Defendants have not removed such impediments and have not modified the
16  Express Facility to conform to accessibility standards.   The Express Defendants
17  have intentionally maintained the Express Facility in its current condition and
18  has intentionally refrained from altering the Express Facility so that it complies
19  with the accessibility standards.

20      228.   Hubbard further alleges that the (continued) presence of barriers at
21  the Express Facility is so obvious as to establish the Express Defendants'
22  discriminatory intent.[41]   On information and belief, Hubbard avers that evidence
23  of the discriminatory intent includes the Express Defendants' refusal to adhere to
24  relevant building standards; disregard for the building plans and permits issued
25  for the Express Facility; conscientious decision to the architectural layout (as it
26  currently exists) at the Express Facility; decision not to remove barriers from the

27

28
────────────────
[41]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 75

Express Facility; and allowance that the Express Facility continues to exist in its non-compliant state. Hubbard further alleges, on information and belief, that the Express Defendants are not in the midst of a remodel, and that the barriers present at the Express Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

229. The Aeropostale Defendants knew that these elements and areas of the Aeropostale Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, the Aeropostale Defendants have the financial resources to remove these barriers from the Aeropostale Facility (without much difficulty or expense), and make the Aeropostale Facility accessible to the physically disabled. To date, however, the Aeropostale Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

230. At all relevant times, the Aeropostale Defendants have possessed and enjoyed sufficient control and authority to modify the Aeropostale Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. The Aeropostale Defendants have not removed such impediments and have not modified the Aeropostale Facility to conform to accessibility standards. The Aeropostale Defendants have intentionally maintained the Aeropostale Facility in its current condition and has intentionally refrained from altering the Aeropostale Facility so that it complies with the accessibility standards.

231. Hubbard further alleges that the (continued) presence of barriers at the Aeropostale Facility is so obvious as to establish the Aeropostale Defendants' discriminatory intent.[42] On information and belief, Hubbard avers that evidence of the discriminatory intent includes the Aeropostale Defendants'

---

[42] E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   refusal to adhere to relevant building standards; disregard for the building plans
2   and permits issued for the Aeropostale Facility; conscientious decision to the
3   architectural layout (as it currently exists) at the Aeropostale Facility; decision
4   not to remove barriers from the Aeropostale Facility; and allowance that the
5   Aeropostale Facility continues to exist in its non-compliant state.   Hubbard
6   further alleges, on information and belief, that the Aeropostale Defendants are
7   not in the midst of a remodel, and that the barriers present at the Aeropostale
8   Facility are not isolated (or temporary) interruptions in access due to
9   maintenance or repairs.

10      232.   The Borders Defendants knew that these elements and areas of the
11   Borders Facility were inaccessible, violate state and federal law, and interfere
12   with (or deny) access to the physically disabled.   Moreover, the Borders
13   Defendants have the financial resources to remove these barriers from the
14   Borders Facility (without much difficulty or expense), and make the Borders
15   Facility accessible to the physically disabled.   To date, however, the Borders
16   Defendants refuse to either remove those barriers or seek an unreasonable
17   hardship exemption to excuse non-compliance.

18      233.   At all relevant times, the Borders Defendants have possessed and
19   enjoyed sufficient control and authority to modify the Borders Facility to remove
20   impediments to wheelchair access and to comply with the Americans with
21   Disabilities Act Accessibility Guidelines and Title 24 regulations.   The Borders
22   Defendants have not removed such impediments and have not modified the
23   Borders Facility to conform to accessibility standards.   The Borders Defendants
24   have intentionally maintained the Borders Facility in its current condition and
25   has intentionally refrained from altering the Borders Facility so that it complies
26   with the accessibility standards.

27      234.   Hubbard further alleges that the (continued) presence of barriers at
28   the Borders Facility is so obvious as to establish the Borders Defendants'

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

discriminatory intent.[43] On information and belief, Hubbard avers that evidence of the discriminatory intent includes the Borders Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Borders Facility; conscientious decision to the architectural layout (as it currently exists) at the Borders Facility; decision not to remove barriers from the Borders Facility; and allowance that the Borders Facility continues to exist in its non-compliant state. Hubbard further alleges, on information and belief, that the Borders Defendants are not in the midst of a remodel, and that the barriers present at the Borders Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

235. The Dickey's Defendants knew that these elements and areas of the Dickey's Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, the Dickey's Defendants have the financial resources to remove these barriers from the Dickey's Facility (without much difficulty or expense), and make the Dickey's Facility accessible to the physically disabled. To date, however, the Dickey's Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

236. At all relevant times, the Dickey's Defendants have possessed and enjoyed sufficient control and authority to modify the Dickey's Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. The Dickey's Defendants have not removed such impediments and have not modified the Dickey's Facility to conform to accessibility standards. The Dickey's Defendants have intentionally maintained the Dickey's Facility in its current

---

[43]  E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6

1    condition and has intentionally refrained from altering the Dickey's Facility so
2    that it complies with the accessibility standards.

3         237.   Hubbard further alleges that the (continued) presence of barriers at
4    the Dickey's Facility is so obvious as to establish the Dickey's Defendants'
5    discriminatory intent.[44]   On information and belief, Hubbard avers that evidence
6    of the discriminatory intent includes the Dickey's Defendants' refusal to adhere
7    to relevant building standards; disregard for the building plans and permits
8    issued for the Dickey's Facility; conscientious decision to the architectural
9    layout (as it currently exists) at the Dickey's Facility; decision not to remove
10   barriers from the Dickey's Facility; and allowance that the Dickey's Facility
11   continues to exist in its non-compliant state.   Hubbard further alleges, on
12   information and belief, that the Dickey's Defendants are not in the midst of a
13   remodel, and that the barriers present at the Dickey's Facility are not isolated (or
14   temporary) interruptions in access due to maintenance or repairs.

15        238.   The Reference 5 Defendants knew that these elements and areas of
16   the Reference 5 Facility were inaccessible, violate state and federal law, and
17   interfere with (or deny) access to the physically disabled.   Moreover, the
18   Reference 5 Defendants have the financial resources to remove these barriers
19   from the Reference 5 Facility (without much difficulty or expense), and make the
20   Reference 5 Facility accessible to the physically disabled.   To date, however, the
21   Reference 5 Defendants refuse to either remove those barriers or seek an
22   unreasonable hardship exemption to excuse non-compliance.

23        239.   At all relevant times, the Reference 5 Defendants have possessed
24   and enjoyed sufficient control and authority to modify the Reference 5 Facility to
25   remove impediments to wheelchair access and to comply with the Americans
26   with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The

27
28
―――――――――――――
[44]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   Reference 5 Defendants have not removed such impediments and have not
2   modified the Reference 5 Facility to conform to accessibility standards. The
3   Reference 5 Defendants have intentionally maintained the Reference 5 Facility in
4   its current condition and has intentionally refrained from altering the Reference 5
5   Facility so that it complies with the accessibility standards.

6       240.   Hubbard further alleges that the (continued) presence of barriers at
7   the Reference 5 Facility is so obvious as to establish the Reference 5 Defendants'
8   discriminatory intent.[45]   On information and belief, Hubbard avers that evidence
9   of the discriminatory intent includes the Reference 5 Defendants' refusal to
10   adhere to relevant building standards; disregard for the building plans and
11   permits issued for the Reference 5 Facility; conscientious decision to the
12   architectural layout (as it currently exists) at the Reference 5 Facility; decision
13   not to remove barriers from the Reference 5 Facility; and allowance that the
14   Reference 5 Facility continues to exist in its non-compliant state. Hubbard
15   further alleges, on information and belief, that the Reference 5 Defendants are
16   not in the midst of a remodel, and that the barriers present at the Reference 5
17   Facility are not isolated (or temporary) interruptions in access due to
18   maintenance or repairs.

19       241.   The No Fear Defendants knew that these elements and areas of the
20   No Fear Facility were inaccessible, violate state and federal law, and interfere
21   with (or deny) access to the physically disabled. Moreover, the No Fear
22   Defendants have the financial resources to remove these barriers from the No
23   Fear Facility (without much difficulty or expense), and make the No Fear
24   Facility accessible to the physically disabled. To date, however, the No Fear
25   Defendants refuse to either remove those barriers or seek an unreasonable
26   hardship exemption to excuse non-compliance.

27

28       [45]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6

242. At all relevant times, the No Fear Defendants have possessed and enjoyed sufficient control and authority to modify the No Fear Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. The No Fear Defendants have not removed such impediments and have not modified the No Fear Facility to conform to accessibility standards. The No Fear Defendants have intentionally maintained the No Fear Facility in its current condition and has intentionally refrained from altering the No Fear Facility so that it complies with the accessibility standards.

243. Hubbard further alleges that the (continued) presence of barriers at the No Fear Facility is so obvious as to establish the No Fear Defendants' discriminatory intent.[46] On information and belief, Hubbard avers that evidence of the discriminatory intent includes the No Fear Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the No Fear Facility; conscientious decision to the architectural layout (as it currently exists) at the No Fear Facility; decision not to remove barriers from the No Fear Facility; and allowance that the No Fear Facility continues to exist in its non-compliant state. Hubbard further alleges, on information and belief, that the No Fear Defendants are not in the midst of a remodel, and that the barriers present at the No Fear Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

244. The Romy Defendants knew that these elements and areas of the Romy Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, the Romy Defendants have the financial resources to remove these barriers from the Romy Facility (without much difficulty or expense), and make the Romy Facility accessible to

---

[46] E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1    the physically disabled.  To date, however, the Romy Defendants refuse to either

2    remove those barriers or seek an unreasonable hardship exemption to excuse

3    non-compliance.

4         245.  At all relevant times, the Romy Defendants have possessed and

5    enjoyed sufficient control and authority to modify the Romy Facility to remove

6    impediments to wheelchair access and to comply with the Americans with

7    Disabilities Act Accessibility Guidelines and Title 24 regulations.  The Romy

8    Defendants have not removed such impediments and have not modified the

9    Romy Facility to conform to accessibility standards.  The Romy Defendants have

10   intentionally maintained the Romy Facility in its current condition and has

11   intentionally refrained from altering the Romy Facility so that it complies with

12   the accessibility standards.

13        246.  Hubbard further alleges that the (continued) presence of barriers at

14   the Romy Facility is so obvious as to establish the Romy Defendants'

15   discriminatory intent.[47]  On information and belief, Hubbard avers that evidence

16   of the discriminatory intent includes the Romy Defendants' refusal to adhere to

17   relevant building standards; disregard for the building plans and permits issued

18   for the Romy Facility; conscientious decision to the architectural layout (as it

19   currently exists) at the Romy Facility; decision not to remove barriers from the

20   Romy Facility; and allowance that the Romy Facility continues to exist in its

21   non-compliant state.  Hubbard further alleges, on information and belief, that the

22   Romy Defendants are not in the midst of a remodel, and that the barriers present

23   at the Romy Facility are not isolated (or temporary) interruptions in access due to

24   maintenance or repairs.

25        247.  The Papaya Defendants knew that these elements and areas of the

26   Papaya Facility were inaccessible, violate state and federal law, and interfere

27

28

---

[47]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

with (or deny) access to the physically disabled.   Moreover, the Papaya Defendants have the financial resources to remove these barriers from the Papaya Facility (without much difficulty or expense), and make the Papaya Facility accessible to the physically disabled.   To date, however, the Papaya Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

248.   At all relevant times, the Papaya Defendants have possessed and enjoyed sufficient control and authority to modify the Papaya Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The Papaya Defendants have not removed such impediments and have not modified the Papaya Facility to conform to accessibility standards.   The Papaya Defendants have intentionally maintained the Papaya Facility in its current condition and has intentionally refrained from altering the Papaya Facility so that it complies with the accessibility standards.

249.   Hubbard further alleges that the (continued) presence of barriers at the Papaya Facility is so obvious as to establish the Papaya Defendants' discriminatory intent.[48]   On information and belief, Hubbard avers that evidence of the discriminatory intent includes the Papaya Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Papaya Facility; conscientious decision to the architectural layout (as it currently exists) at the Papaya Facility; decision not to remove barriers from the Papaya Facility; and allowance that the Papaya Facility continues to exist in its non-compliant state.   Hubbard further alleges, on information and belief, that the Papaya Defendants are not in the midst of a remodel, and that the barriers present

---

[48]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 83

1 | at the Papaya Facility are not isolated (or temporary) interruptions in access due
2 | to maintenance or repairs.

3 |     250.   The Hot Topic Defendants knew that these elements and areas of
4 | the Hot Topic Facility were inaccessible, violate state and federal law, and
5 | interfere with (or deny) access to the physically disabled.  Moreover, the Hot
6 | Topic Defendants have the financial resources to remove these barriers from the
7 | Hot Topic Facility (without much difficulty or expense), and make the Hot Topic
8 | Facility accessible to the physically disabled.  To date, however, the Hot Topic
9 | Defendants refuse to either remove those barriers or seek an unreasonable
10 | hardship exemption to excuse non-compliance.

11 |     251.   At all relevant times, the Hot Topic Defendants have possessed and
12 | enjoyed sufficient control and authority to modify the Hot Topic Facility to
13 | remove impediments to wheelchair access and to comply with the Americans
14 | with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The Hot
15 | Topic Defendants have not removed such impediments and have not modified
16 | the Hot Topic Facility to conform to accessibility standards.  The Hot Topic
17 | Defendants have intentionally maintained the Hot Topic Facility in its current
18 | condition and has intentionally refrained from altering the Hot Topic Facility so
19 | that it complies with the accessibility standards.

20 |     252.   Hubbard further alleges that the (continued) presence of barriers at
21 | the Hot Topic Facility is so obvious as to establish the Hot Topic Defendants'
22 | discriminatory intent.[49]  On information and belief, Hubbard avers that evidence
23 | of the discriminatory intent includes the Hot Topic Defendants' refusal to adhere
24 | to relevant building standards; disregard for the building plans and permits
25 | issued for the Hot Topic Facility; conscientious decision to the architectural
26 | layout (as it currently exists) at the Hot Topic Facility; decision not to remove
27 |
28 |

---

[49]    E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 84

1 | barriers from the Hot Topic Facility; and allowance that the Hot Topic Facility
2 | continues to exist in its non-compliant state.   Hubbard further alleges, on
3 | information and belief, that the Hot Topic Defendants are not in the midst of a
4 | remodel, and that the barriers present at the Hot Topic Facility are not isolated
5 | (or temporary) interruptions in access due to maintenance or repairs.[50]

6 |     253.   The PacSun Defendants knew that these elements and areas of the
7 | PacSun Facility were inaccessible, violate state and federal law, and interfere
8 | with (or deny) access to the physically disabled.   Moreover, the PacSun
9 | Defendants have the financial resources to remove these barriers from the
10 | PacSun Facility (without much difficulty or expense), and make the PacSun
11 | Facility accessible to the physically disabled.   To date, however, the PacSun
12 | Defendants refuse to either remove those barriers or seek an unreasonable
13 | hardship exemption to excuse non-compliance.

14 |     254.   At all relevant times, the PacSun Defendants have possessed and
15 | enjoyed sufficient control and authority to modify the PacSun Facility to remove
16 | impediments to wheelchair access and to comply with the Americans with
17 | Disabilities Act Accessibility Guidelines and Title 24 regulations.   The PacSun
18 | Defendants have not removed such impediments and have not modified the
19 | PacSun Facility to conform to accessibility standards.   The PacSun Defendants
20 | have intentionally maintained the PacSun Facility in its current condition and has
21 | intentionally refrained from altering the PacSun Facility so that it complies with
22 | the accessibility standards.

23 |     255.   Hubbard further alleges that the (continued) presence of barriers at
24 | the PacSun Facility is so obvious as to establish the PacSun Defendants'
25 | discriminatory intent.[51]   On information and belief, Hubbard avers that evidence
26 | of the discriminatory intent includes the PacSun Defendants' refusal to adhere to
27 |

28 |

---

[50]   Id.; 28 C.F.R. § 36.211(b)
[51]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  relevant building standards; disregard for the building plans and permits issued
2  for the PacSun Facility; conscientious decision to the architectural layout (as it
3  currently exists) at the PacSun Facility; decision not to remove barriers from the
4  PacSun Facility; and allowance that the PacSun Facility continues to exist in its
5  non-compliant state.  Hubbard further alleges, on information and belief, that the
6  PacSun Defendants are not in the midst of a remodel, and that the barriers
7  present at the PacSun Facility are not isolated (or temporary) interruptions in
8  access due to maintenance or repairs.[52]

9      256.   The H & M Defendants knew that these elements and areas of the H
10 & M Facility were inaccessible, violate state and federal law, and interfere with
11 (or deny) access to the physically disabled.  Moreover, the H & M Defendants
12 have the financial resources to remove these barriers from the H & M Facility
13 (without much difficulty or expense), and make the H & M Facility accessible to
14 the physically disabled.   To date, however, the H & M Defendants refuse to
15 either remove those barriers or seek an unreasonable hardship exemption to
16 excuse non-compliance.

17     257.   At all relevant times, the H & M Defendants have possessed and
18 enjoyed sufficient control and authority to modify the H & M Facility to remove
19 impediments to wheelchair access and to comply with the Americans with
20 Disabilities Act Accessibility Guidelines and Title 24 regulations.  The H & M
21 Defendants have not removed such impediments and have not modified the H &
22 M Facility to conform to accessibility standards.  The H & M Defendants have
23 intentionally maintained the H & M Facility in its current condition and has
24 intentionally refrained from altering the H & M Facility so that it complies with
25 the accessibility standards.

26
27
28
[52]   Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 86

1    258.  Hubbard further alleges that the (continued) presence of barriers at

2   the H & M Facility is so obvious as to establish the H & M Defendants'

3   discriminatory intent.[53]  On information and belief, Hubbard avers that evidence

4   of the discriminatory intent includes the H & M Defendants' refusal to adhere to

5   relevant building standards; disregard for the building plans and permits issued

6   for the H & M Facility; conscientious decision to the architectural layout (as it

7   currently exists) at the H & M Facility; decision not to remove barriers from the

8   H & M Facility; and allowance that the H & M Facility continues to exist in its

9   non-compliant state.  Hubbard further alleges, on information and belief, that the

10  H & M Defendants are not in the midst of a remodel, and that the barriers present

11  at the H & M Facility are not isolated (or temporary) interruptions in access due

12  to maintenance or repairs.[54]

13   259.  The Body Basics Defendants knew that these elements and areas of

14  the Body Basics Facility were inaccessible, violate state and federal law, and

15  interfere with (or deny) access to the physically disabled.  Moreover, the Body

16  Basics Defendants have the financial resources to remove these barriers from the

17  Body Basics Facility (without much difficulty or expense), and make the Body

18  Basics Facility accessible to the physically disabled.  To date, however, the Body

19  Basics Defendants refuse to either remove those barriers or seek an unreasonable

20  hardship exemption to excuse non-compliance.

21   260.  At all relevant times, the Body Basics Defendants have possessed

22  and enjoyed sufficient control and authority to modify the Body Basics Facility

23  to remove impediments to wheelchair access and to comply with the Americans

24  with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The

25  Body Basics Defendants have not removed such impediments and have not

26  modified the Body Basics Facility to conform to accessibility standards.   The

27

28  [53]  E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
    [54]  Id.; 28 C.F.R. § 36.211(b)
    *Hubbard v. Plaza Bonita, LP, et al.*
    Plaintiff's Complaint

1  Body Basics Defendants have intentionally maintained the Body Basics Facility
2  in its current condition and has intentionally refrained from altering the Body
3  Basics Facility so that it complies with the accessibility standards.

4      261.  Hubbard further alleges that the (continued) presence of barriers at
5  the Body Basics Facility is so obvious as to establish the Body Basics
6  Defendants' discriminatory intent.[55]  On information and belief, Hubbard avers
7  that evidence of the discriminatory intent includes the Body Basics Defendants'
8  refusal to adhere to relevant building standards; disregard for the building plans
9  and permits issued for the Body Basics Facility; conscientious decision to the
10  architectural layout (as it currently exists) at the Body Basics Facility; decision
11  not to remove barriers from the Body Basics Facility; and allowance that the
12  Body Basics Facility continues to exist in its non-compliant state.  Hubbard
13  further alleges, on information and belief, that the Body Basics Defendants are
14  not in the midst of a remodel, and that the barriers present at the Body Basics
15  Facility are not isolated (or temporary) interruptions in access due to
16  maintenance or repairs.[56]

17                      VI.     FIRST CLAIM

18             **Americans with Disabilities Act of 1990**

19          <u>Denial of "Full and Equal" Enjoyment and Use</u>

20          (The Plaza Bonita Common Area Facility)

21      262.  Hubbard incorporates the allegations contained in paragraphs 1
22  through 261 for this claim.

23      263.  Title III of the ADA holds as a "general rule" that no individual
24  shall be discriminated against on the basis of disability in the full and equal
25  enjoyment (or use) of goods, services, facilities, privileges, and accommodations

26

27

---

28   [55]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
 [56]   Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   offered by any person who owns, operates, or leases a place of public
2   accommodation. 42 U.S.C. § 12182(a).

3      264.   The Plaza Bonita Common Area Defendants discriminated against
4   Hubbard by denying "full and equal enjoyment" and use of the goods, services,
5   facilities, privileges or accommodations of the Plaza Bonita Common Area
6   Facility during each visit and each incident of deterrence.

7          Failure to Remove Architectural Barriers in an Existing Facility

8      265.   The ADA specifically prohibits failing to remove architectural
9   barriers, which are structural in nature, in existing facilities where such removal
10  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily
11  achievable" is defined as "easily accomplishable and able to be carried out
12  without much difficulty or expense." Id. § 12181(9).

13     266.   When an entity can demonstrate that removal of a barrier is not
14  readily achievable, a failure to make goods, services, facilities, or
15  accommodations available through alternative methods is also specifically
16  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

17     267.   Here, Hubbard alleges that the Plaza Bonita Common Area
18  Defendants can easily remove the architectural barriers at the Plaza Bonita
19  Common Area Facility without much difficulty or expense, and that the Plaza
20  Bonita Common Area Defendants violated the ADA by failing to remove those
21  barriers, when it was readily achievable to do so.

22     268.   In the alternative, if it was not "readily achievable" for the Plaza
23  Bonita Common Area Defendants to remove the Plaza Bonita Common Area
24  Facility's barriers, then the Plaza Bonita Common Area Defendants violated the
25  ADA by failing to make the required services available through alternative
26  methods, which are readily achievable.

27  ///

28  ///

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1

## Failure to Design and Construct an Accessible Facility

2    269.   On information and belief, the Plaza Bonita Common Area Facility

3 was designed or constructed (or both) after January 26, 1992—independently

4 triggering access requirements under Title III of the ADA.

5    270.   The ADA also prohibits designing and constructing facilities for

6 first occupancy after January 26, 1993, that aren't readily accessible to, and

7 usable by, individuals with disabilities when it was structurally practicable to do

8 so. 42 U.S.C. § 12183(a)(1).

9    271.   Here, the Plaza Bonita Common Area Defendants violated the ADA

10 by designing or constructing (or both) the Plaza Bonita Common Area Facility in

11 a manner that was not readily accessible to the physically disabled public—

12 including Hubbard—when it was structurally practical to do so.[57]

13

## Failure to Make an Altered Facility Accessible

14    272.   On information and belief, the Plaza Bonita Common Area Facility

15 was modified after January 26, 1992, independently triggering access

16 requirements under the ADA.

17    273.   The ADA also requires that facilities altered in a manner that affects

18 (or could affect) its usability must be made readily accessible to individuals with

19 disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering

20 an area that contains a facility's primary function also requires adding making

21 the paths of travel, bathrooms, telephones, and drinking fountains serving that

22 area accessible to the maximum extent feasible. Id.

23    274.   Here, the Plaza Bonita Common Area Defendants altered the Plaza

24 Bonita Common Area Facility in a manner that violated the ADA and was not

25 readily accessible to the physically disabled public—including Hubbard—to the

26 maximum extent feasible.

27

28 [57]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

<u>Failure to Modify Existing Policies and Procedures</u>

275. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

276. Here, the Plaza Bonita Common Area Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Plaza Bonita Common Area Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

277. Hubbard seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

278. Hubbard also seeks a finding from this Court (*i.e.,* declaratory relief) that the Plaza Bonita Common Area Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## VII.    SECOND CLAIM

### Disabled Persons Act

(The Plaza Bonita Common Area Facility)

279. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

280. California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

281.  California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

282.  Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

283.  Here, the Plaza Bonita Common Area Defendants discriminated against the physically disabled public—including Hubbard—by denying them full and equal access to the Plaza Bonita Common Area Facility.  The Plaza Bonita Common Area Defendants also violated Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under the Disabled Persons Act.

284.  For each offense of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

She also seeks to enjoin the Plaza Bonita Common Area Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

VIII.    THIRD CLAIM

**Unruh Civil Rights Act**

(The Plaza Bonita Common Area Facility)

285.  Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

286.  California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations,

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

287.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

288.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

289.   The Plaza Bonita Common Area Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

290.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

291.   Hubbard was damaged by the Plaza Bonita Common Area Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

292.   Hubbard also seeks to enjoin the Plaza Bonita Common Area Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

IX.   FOURTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Plaza Bonita Common Area Facility)

293.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

294.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

295.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

296.   Hubbard alleges the Plaza Bonita Common Area Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Plaza Bonita Common Area Facility was not exempt under Health and Safety Code § 19956.

297.   The Plaza Bonita Common Area Defendants' non-compliance with these requirements at the Plaza Bonita Common Area Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities. Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

X.      FIFTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Corner Bakery Facility)

298.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

299.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

300.   The Corner Bakery Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Corner Bakery Facility during each visit and each incident of deterrence.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 94

1

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

2    301.   The ADA specifically prohibits failing to remove architectural

3    barriers, which are structural in nature, in existing facilities where such removal

4    is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily

5    achievable" is defined as "easily accomplishable and able to be carried out

6    without much difficulty or expense." <u>Id.</u> § 12181(9).

7    302.   When an entity can demonstrate that removal of a barrier is not

8    readily achievable,  a  failure  to  make  goods,  services,  facilities,  or

9    accommodations available through alternative methods is also specifically

10   prohibited if these methods are readily achievable. <u>Id.</u> § 12182(b)(2)(A)(v).

11   303.   Here, Hubbard alleges that the Corner Bakery Defendants can easily

12   remove the architectural barriers at the Corner Bakery Facility without much

13   difficulty or expense, and that the Corner Bakery Defendants violated the ADA

14   by failing to remove those barriers, when it was readily achievable to do so.

15   304.   In the alternative, if it was not "readily achievable" for the Corner

16   Bakery Defendants to remove the Corner Bakery Facility's barriers, then the

17   Corner Bakery Defendants violated the ADA by failing to make the required

18   services available through alternative methods, which are readily achievable.

19   <u>Failure to Design and Construct an Accessible Facility</u>

20   305.   On information and belief, the Corner Bakery Facility was designed

21   or constructed (or both) after January 26, 1992—independently triggering access

22   requirements under Title III of the ADA.

23   306.   The ADA also prohibits designing and constructing facilities for

24   first occupancy after January 26, 1993, that aren't readily accessible to, and

25   usable by, individuals with disabilities when it was structurally practicable to do

26   so. 42 U.S.C. § 12183(a)(1).

27   307.   Here, the Corner Bakery Defendants violated the ADA by designing

28   or constructing (or both) the Corner Bakery Facility in a manner that was not

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  readily accessible to the physically disabled public—including Hubbard—when

2  it was structurally practical to do so.[58]

3  Failure to Make an Altered Facility Accessible

4  308.   On information and belief, the Corner Bakery Facility was modified

5  after January 26, 1992, independently triggering access requirements under the

6  ADA.

7  309.   The ADA also requires that facilities altered in a manner that affects

8  (or could affect) its usability must be made readily accessible to individuals with

9  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering

10  an area that contains a facility's primary function also requires adding making

11  the paths of travel, bathrooms, telephones, and drinking fountains serving that

12  area accessible to the maximum extent feasible. Id.

13  310.   Here, the Corner Bakery Defendants altered the Corner Bakery

14  Facility in a manner that violated the ADA and was not readily accessible to the

15  physically disabled public—including Hubbard—to the maximum extent

16  feasible.

17  Failure to Modify Existing Policies and Procedures

18  311.   The ADA also requires reasonable modifications in policies,

19  practices, or procedures, when necessary to afford such goods, services,

20  facilities, or accommodations to individuals with disabilities, unless the entity

21  can demonstrate that making such modifications would fundamentally alter their

22  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

23  312.   Here, the Corner Bakery Defendants violated the ADA by failing to

24  make reasonable modifications in policies, practices, or procedures at the Corner

25  Bakery Facility, when these modifications were necessary to afford (and would

26

27

28  [58]  Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
private attorney general under either state or federal statutes.
*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  not fundamentally alter the nature of) these goods, services, facilities, or
2  accommodations.

3      313.  Hubbard seeks all relief available under the ADA (*i.e.*, injunctive
4  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
5  U.S.C. § 12205.

6      314.  Hubbard also seeks a finding from this Court (*i.e.,* declaratory
7  relief) that the Corner Bakery Defendants violated the ADA in order to pursue
8  damages under California's Unruh Civil Rights Act or Disabled Persons Act.

9  XI.    SIXTH CLAIM

10  **Disabled Persons Act**

11  (The Corner Bakery Facility)

12      315.  Hubbard incorporates the allegations contained in paragraphs 1
13  through 261 for this claim.

14      316.  California Civil Code § 54 states, in part, that: Individuals with
15  disabilities have the same right as the general public to the full and free use of
16  the streets, sidewalks, walkways, public buildings and facilities, and other public
17  places.

18      317.  California Civil Code § 54.1 also states, in part, that: Individuals
19  with disabilities shall be entitled to full and equal access to accommodations,
20  facilities, telephone facilities, places of public accommodation, and other places
21  to which the general public is invited.

22      318.  Both sections specifically incorporate (by reference) an individual's
23  rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

24      319.  Here, the Corner Bakery Defendants discriminated against the
25  physically disabled public—including Hubbard—by denying them full and equal
26  access to the Corner Bakery Facility.  The Corner Bakery Defendants also
27  violated Hubbard's rights under the ADA, and, therefore, infringed upon or
28  violated (or both) Hubbard's rights under the Disabled Persons Act.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

320.   <u>For each offense</u> of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

321.   She also seeks to enjoin the Corner Bakery Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

XII.   SEVENTH CLAIM

**Unruh Civil Rights Act**

(The Corner Bakery Facility)

322.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

323.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

324.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

325.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

326.   The Corner Bakery Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

327.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

328.   Hubbard was damaged by the Corner Bakery Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

329.   Hubbard also seeks to enjoin the Corner Bakery Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XIII.   EIGHTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Corner Bakery Facility)

330.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

331.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

332.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

333.   Hubbard alleges the Corner Bakery Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Corner Bakery Facility was not exempt under Health and Safety Code § 19956.

334.   The Corner Bakery Defendants' non-compliance with these requirements at the Corner Bakery Facility aggrieved (or potentially aggrieved)

Hubbard and other persons with physical disabilities.  Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XIV.   NINTH CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The Rave Facility)

335.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

336.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

337.   The Rave Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Rave Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

338.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

339.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

340.   Here, Hubbard alleges that the Rave Defendants can easily remove the architectural barriers at the Rave Facility without much difficulty or expense, and that the Rave Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

341.   In the alternative, if it was not "readily achievable" for the Rave Defendants to remove the Rave Facility's barriers, then the Rave Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

342.   On information and belief, the Rave Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

343.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

344.   Here, the Rave Defendants violated the ADA by designing or constructing (or both) the Rave Facility in a manner that was not readily accessible to the physically disabled public—including Hubbard—when it was structurally practical to do so.[59]

<u>Failure to Make an Altered Facility Accessible</u>

345.   On information and belief, the Rave Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

346.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).   Altering

---

[59]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  an area that contains a facility's primary function also requires adding making

2  the paths of travel, bathrooms, telephones, and drinking fountains serving that

3  area accessible to the maximum extent feasible. Id.

4      347.  Here, the Rave Defendants altered the Rave Facility in a manner

5  that violated the ADA and was not readily accessible to the physically disabled

6  public—including Hubbard—to the maximum extent feasible.

7  Failure to Modify Existing Policies and Procedures

8      348.  The ADA also requires reasonable modifications in policies,

9  practices, or procedures, when necessary to afford such goods, services,

10  facilities, or accommodations to individuals with disabilities, unless the entity

11  can demonstrate that making such modifications would fundamentally alter their

12  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

13      349.  Here, the Rave Defendants violated the ADA by failing to make

14  reasonable modifications in policies, practices, or procedures at the Rave

15  Facility, when these modifications were necessary to afford (and would not

16  fundamentally alter the nature of) these goods, services, facilities, or

17  accommodations.

18      350.  Hubbard seeks all relief available under the ADA (i.e., injunctive

19  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42

20  U.S.C. § 12205.

21      351.  Hubbard also seeks a finding from this Court (i.e., declaratory

22  relief) that the Rave Defendants violated the ADA in order to pursue damages

23  under California's Unruh Civil Rights Act or Disabled Persons Act.

24  XV.    TENTH CLAIM

25  **Disabled Persons Act**

26  (The Rave Facility)

27      352.  Hubbard incorporates the allegations contained in paragraphs 1

28  through 261 for this claim.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

353.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

354.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

355.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

356.   Here, the Rave Defendants discriminated against the physically disabled public—including Hubbard—by denying them full and equal access to the Rave Facility.  The Rave Defendants also violated Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under the Disabled Persons Act.

357.   For each offense of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

358.   She also seeks to enjoin the Rave Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XVI.    ELEVENTH CLAIM

## Unruh Civil Rights Act

### (The Rave Facility)

359.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

360. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

361. California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

362. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

363. The Rave Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

364. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

365. Hubbard was damaged by the Rave Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

366. Hubbard also seeks to enjoin the Rave Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XVII.   TWELVTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Rave Facility)

367. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

368.  Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

369.  Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

370.  Hubbard alleges the Rave Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Rave Facility was not exempt under Health and Safety Code § 19956.

371.  The Rave Defendants' non-compliance with these requirements at the Rave Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities.  Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XVIII.    THIRTEENTH CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The Finish Line Facility)

372.  Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

373.  Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

374.  The Finish Line Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities,

1 privileges or accommodations of the Finish Line Facility during each visit and
2 each incident of deterrence.

3 <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

4 375.  The ADA specifically prohibits failing to remove architectural
5 barriers, which are structural in nature, in existing facilities where such removal
6 is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily
7 achievable" is defined as "easily accomplishable and able to be carried out
8 without much difficulty or expense." <u>Id.</u> § 12181(9).

9 376.  When an entity can demonstrate that removal of a barrier is not
10 readily achievable, a failure to make goods, services, facilities, or
11 accommodations available through alternative methods is also specifically
12 prohibited if these methods are readily achievable. <u>Id.</u> § 12182(b)(2)(A)(v).

13 377.  Here, Hubbard alleges that the Finish Line Defendants can easily
14 remove the architectural barriers at the Finish Line Facility without much
15 difficulty or expense, and that the Finish Line Defendants violated the ADA by
16 failing to remove those barriers, when it was readily achievable to do so.

17 378.  In the alternative, if it was not "readily achievable" for the Finish
18 Line Defendants to remove the Finish Line Facility's barriers, then the Finish
19 Line Defendants violated the ADA by failing to make the required services
20 available through alternative methods, which are readily achievable.

21 <u>Failure to Design and Construct an Accessible Facility</u>

22 379.  On information and belief, the Finish Line Facility was designed or
23 constructed (or both) after January 26, 1992—independently triggering access
24 requirements under Title III of the ADA.

25 380.  The ADA also prohibits designing and constructing facilities for
26 first occupancy after January 26, 1993, that aren't readily accessible to, and
27 usable by, individuals with disabilities when it was structurally practicable to do
28 so. 42 U.S.C. § 12183(a)(1).

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   381.  Here, the Finish Line Defendants violated the ADA by designing or
2   constructing (or both) the Finish Line Facility in a manner that was not readily
3   accessible to the physically disabled public—including Hubbard—when it was
4   structurally practical to do so.[60]

5   Failure to Make an Altered Facility Accessible

6   382.  On information and belief, the Finish Line Facility was modified
7   after January 26, 1992, independently triggering access requirements under the
8   ADA.

9   383.  The ADA also requires that facilities altered in a manner that affects
10  (or could affect) its usability must be made readily accessible to individuals with
11  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering
12  an area that contains a facility's primary function also requires adding making
13  the paths of travel, bathrooms, telephones, and drinking fountains serving that
14  area accessible to the maximum extent feasible. Id.

15  384.  Here, the Finish Line Defendants altered the Finish Line Facility in
16  a manner that violated the ADA and was not readily accessible to the physically
17  disabled public—including Hubbard—to the maximum extent feasible.

18  Failure to Modify Existing Policies and Procedures

19  385.  The ADA also requires reasonable modifications in policies,
20  practices, or procedures, when necessary to afford such goods, services,
21  facilities, or accommodations to individuals with disabilities, unless the entity
22  can demonstrate that making such modifications would fundamentally alter their
23  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

24  386.  Here, the Finish Line Defendants violated the ADA by failing to
25  make reasonable modifications in policies, practices, or procedures at the Finish
26  Line Facility, when these modifications were necessary to afford (and would not

27
28  [60]  Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
        private attorney general under either state or federal statutes.
        *Hubbard v. Plaza Bonita, LP, et al.*
        Plaintiff's Complaint

1   fundamentally alter the nature of) these goods, services, facilities, or
2   accommodations.

3      387.  Hubbard seeks all relief available under the ADA (*i.e.*, injunctive
4   relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
5   U.S.C. § 12205.

6      388.  Hubbard also seeks a finding from this Court (*i.e.,* declaratory
7   relief) that the Finish Line Defendants violated the ADA in order to pursue
8   damages under California's Unruh Civil Rights Act or Disabled Persons Act.

9                    XIX.    FOURTEENTH CLAIM

10                       **Disabled Persons Act**

11                     (The Finish Line Facility)

12     389.  Hubbard incorporates the allegations contained in paragraphs 1
13  through 261 for this claim.

14     390.  California Civil Code § 54 states, in part, that: Individuals with
15  disabilities have the same right as the general public to the full and free use of
16  the streets, sidewalks, walkways, public buildings and facilities, and other public
17  places.

18     391.  California Civil Code § 54.1 also states, in part, that: Individuals
19  with disabilities shall be entitled to full and equal access to accommodations,
20  facilities, telephone facilities, places of public accommodation, and other places
21  to which the general public is invited.

22     392.  Both sections specifically incorporate (by reference) an individual's
23  rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

24     393.  Here, the Finish Line Defendants discriminated against the
25  physically disabled public—including Hubbard—by denying them full and equal
26  access to the Finish Line Facility. The Finish Line Defendants also violated
27  Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or
28  both) Hubbard's rights under the Disabled Persons Act.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

394. <u>For each offense</u> of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

395. She also seeks to enjoin the Finish Line Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XX.    FIFTEENTH CLAIM

### Unruh Civil Rights Act

(The Finish Line Facility)

396. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

397. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

398. California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

399. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

400. The Finish Line Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1   401.   These acts and omissions (including the ones that violate the ADA)

2   denied, aided or incited a denial, or discriminated against Hubbard by violating

3   the Unruh Act.

4   402.   Hubbard was damaged by the Finish Line Defendants' wrongful

5   conduct, and seeks statutory minimum damages of four thousand dollars

6   ($4,000) for each offense.

7   403.   Hubbard also seeks to enjoin the Finish Line Defendants from

8   violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and

9   costs incurred under California Civil Code § 52(a).

10   XXI.   SIXTEENTH CLAIM

11   **Denial of Full and Equal Access to Public Facilities**

12   (The Finish Line Facility)

13   404.   Hubbard incorporates the allegations contained in paragraphs 1

14   through 261 for this claim.

15   405.   Health and Safety Code § 19955(a) states, in part, that: California

16   public accommodations or facilities (built with private funds) shall adhere to the

17   provisions of Government Code § 4450.

18   406.   Health and Safety Code § 19959 states, in part, that: Every existing

19   (non-exempt) public accommodation constructed prior to July 1, 1970, which is

20   altered or structurally repaired, is required to comply with this chapter.

21   407.   Hubbard alleges the Finish Line Facility is a public accommodation

22   constructed, altered, or repaired in a manner that violates Part 5.5 of the Health

23   and Safety Code or Government Code § 4450 (or both), and that the Finish Line

24   Facility was not exempt under Health and Safety Code § 19956.

25   408.   The   Finish   Line   Defendants'   non-compliance   with   these

26   requirements at the Finish Line Facility aggrieved (or potentially aggrieved)

27   Hubbard and other persons with physical disabilities.   Accordingly, she seeks

28   injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 110

## XXII.   SEVENTEENTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Rave Girl Facility)

409.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

410.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

411.   The Rave Girl Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Rave Girl Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

412.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

413.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

414.   Here, Hubbard alleges that the Rave Girl Defendants can easily remove the architectural barriers at the Rave Girl Facility without much

1  difficulty or expense, and that the Rave Girl Defendants violated the ADA by

2  failing to remove those barriers, when it was readily achievable to do so.

3      415.  In the alternative, if it was not "readily achievable" for the Rave

4  Girl Defendants to remove the Rave Girl Facility's barriers, then the Rave Girl

5  Defendants violated the ADA by failing to make the required services available

6  through alternative methods, which are readily achievable.

7              Failure to Design and Construct an Accessible Facility

8      416.  On information and belief, the Rave Girl Facility was designed or

9  constructed (or both) after January 26, 1992—independently triggering access

10  requirements under Title III of the ADA.

11     417.  The ADA also prohibits designing and constructing facilities for

12  first occupancy after January 26, 1993, that aren't readily accessible to, and

13  usable by, individuals with disabilities when it was structurally practicable to do

14  so. 42 U.S.C. § 12183(a)(1).

15     418.  Here, the Rave Girl Defendants violated the ADA by designing or

16  constructing (or both) the Rave Girl Facility in a manner that was not readily

17  accessible to the physically disabled public—including Hubbard—when it was

18  structurally practical to do so.[61]

19              Failure to Make an Altered Facility Accessible

20     419.  On information and belief, the Rave Girl Facility was modified after

21  January 26, 1992, independently triggering access requirements under the ADA.

22     420.  The ADA also requires that facilities altered in a manner that affects

23  (or could affect) its usability must be made readily accessible to individuals with

24  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering

25  an area that contains a facility's primary function also requires adding making

26

27

---

28  [61]  Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
       private attorney general under either state or federal statutes.
       *Hubbard v. Plaza Bonita, LP, et al.*
       Plaintiff's Complaint

                              Page 112

the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

421. Here, the Rave Girl Defendants altered the Rave Girl Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Hubbard—to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

422. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

423. Here, the Rave Girl Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Rave Girl Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

424. Hubbard seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

425. Hubbard also seeks a finding from this Court (*i.e.*, declaratory relief) that the Rave Girl Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

XXIII.   EIGHTEENTH CLAIM

**Disabled Persons Act**

(The Rave Girl Facility)

426. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

427.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

428.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

429.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

430.   Here, the Rave Girl Defendants discriminated against the physically disabled public—including Hubbard—by denying them full and equal access to the Rave Girl Facility.  The Rave Girl Defendants also violated Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under the Disabled Persons Act.

431.   For each offense of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

432.   She also seeks to enjoin the Rave Girl Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XXIV.   NINETEENTH CLAIM

### Unruh Civil Rights Act

(The Rave Girl Facility)

433.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

434. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

435. California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

436. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

437. The Rave Girl Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

438. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

439. Hubbard was damaged by the Rave Girl Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

440. Hubbard also seeks to enjoin the Rave Girl Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XXV.    TWENTIETH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Rave Girl Facility)

441. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

442.  Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

443.  Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

444.  Hubbard alleges the Rave Girl Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Rave Girl Facility was not exempt under Health and Safety Code § 19956.

445.  The Rave Girl Defendants' non-compliance with these requirements at the Rave Girl Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities.  Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XXVI.   TWENTY-FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

(The Vans Facility)

446.  Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

447.  Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

448.  The Vans Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or

1  accommodations of the Vans Facility during each visit and each incident of

2  deterrence.

3  　　　　Failure to Remove Architectural Barriers in an Existing Facility

4  　　　449.  The ADA specifically prohibits failing to remove architectural

5  barriers, which are structural in nature, in existing facilities where such removal

6  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily

7  achievable" is defined as "easily accomplishable and able to be carried out

8  without much difficulty or expense." Id. § 12181(9).

9  　　　450.  When an entity can demonstrate that removal of a barrier is not

10  readily achievable, a failure to make goods, services, facilities, or

11  accommodations available through alternative methods is also specifically

12  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

13  　　　451.  Here, Hubbard alleges that the Vans Defendants can easily remove

14  the architectural barriers at the Vans Facility without much difficulty or expense,

15  and that the Vans Defendants violated the ADA by failing to remove those

16  barriers, when it was readily achievable to do so.

17  　　　452.  In the alternative, if it was not "readily achievable" for the Vans

18  Defendants to remove the Vans Facility's barriers, then the Vans Defendants

19  violated the ADA by failing to make the required services available through

20  alternative methods, which are readily achievable.

21  　　　　Failure to Design and Construct an Accessible Facility

22  　　　453.  On information and belief, the Vans Facility was designed or

23  constructed (or both) after January 26, 1992—independently triggering access

24  requirements under Title III of the ADA.

25  　　　454.  The ADA also prohibits designing and constructing facilities for

26  first occupancy after January 26, 1993, that aren't readily accessible to, and

27  usable by, individuals with disabilities when it was structurally practicable to do

28  so. 42 U.S.C. § 12183(a)(1).

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

　　　　　　　　　　　　　Page 117

455. Here, the Vans Defendants violated the ADA by designing or constructing (or both) the Vans Facility in a manner that was not readily accessible to the physically disabled public—including Hubbard—when it was structurally practical to do so.[62]

### Failure to Make an Altered Facility Accessible

456. On information and belief, the Vans Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

457. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

458. Here, the Vans Defendants altered the Vans Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Hubbard—to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

459. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

460. Here, the Vans Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Vans Facility, when these modifications were necessary to afford (and would not

---

[62] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  fundamentally alter the nature of) these goods, services, facilities, or
2  accommodations.

3       461.  Hubbard seeks all relief available under the ADA (*i.e.*, injunctive
4  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
5  U.S.C. § 12205.

6       462.  Hubbard also seeks a finding from this Court (*i.e.,* declaratory
7  relief) that the Vans Defendants violated the ADA in order to pursue damages
8  under California's Unruh Civil Rights Act or Disabled Persons Act.

9                 XXVII.   TWENTY-SECOND CLAIM

10                       **Disabled Persons Act**

11                        (The Vans Facility)

12      463.  Hubbard incorporates the allegations contained in paragraphs 1
13  through 261 for this claim.

14      464.  California Civil Code § 54 states, in part, that: Individuals with
15  disabilities have the same right as the general public to the full and free use of
16  the streets, sidewalks, walkways, public buildings and facilities, and other public
17  places.

18      465.  California Civil Code § 54.1 also states, in part, that: Individuals
19  with disabilities shall be entitled to full and equal access to accommodations,
20  facilities, telephone facilities, places of public accommodation, and other places
21  to which the general public is invited.

22      466.  Both sections specifically incorporate (by reference) an individual's
23  rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

24      467.  Here, the Vans Defendants discriminated against the physically
25  disabled public—including Hubbard—by denying them full and equal access to
26  the Vans Facility.  The Vans Defendants also violated Hubbard's rights under the
27  ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under
28  the Disabled Persons Act.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

468.  <u>For each offense</u> of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

He also seeks to enjoin the Vans Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XXVIII.   TWENTY-THIRD CLAIM

### Unruh Civil Rights Act

(The Vans Facility)

469.  Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

470.  California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

471.  California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

472.  California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

473.  The Vans Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

1    474.   These acts and omissions (including the ones that violate the ADA)
2    denied, aided or incited a denial, or discriminated against Hubbard by violating
3    the Unruh Act.

4    475.   Hubbard was damaged by the Vans Defendants' wrongful conduct,
5    and seeks statutory minimum damages of four thousand dollars ($4,000) for each
6    offense.

7    476.   Hubbard also seeks to enjoin the Vans Defendants from violating
8    the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs
9    incurred under California Civil Code § 52(a).

10                    XXIX.   TWENTY-FOURTH CLAIM

11           **Denial of Full and Equal Access to Public Facilities**

12                         (The VANS Facility)

13    477.   Hubbard incorporates the allegations contained in paragraphs 1
14    through 261 for this claim.

15    478.   Health and Safety Code § 19955(a) states, in part, that: California
16    public accommodations or facilities (built with private funds) shall adhere to the
17    provisions of Government Code § 4450.

18    479.   Health and Safety Code § 19959 states, in part, that: Every existing
19    (non-exempt) public accommodation constructed prior to July 1, 1970, which is
20    altered or structurally repaired, is required to comply with this chapter.

21    480.   Hubbard alleges the Vans Facility is a public accommodation
22    constructed, altered, or repaired in a manner that violates Part 5.5 of the Health
23    and Safety Code or Government Code § 4450 (or both), and that the Vans
24    Facility was not exempt under Health and Safety Code § 19956.

25    481.   The Vans Defendants' non-compliance with these requirements at
26    the Vans Facility aggrieved (or potentially aggrieved) Hubbard and other persons
27    with physical disabilities.  Accordingly, she seeks injunctive relief and attorney
28    fees pursuant to Health and Safety Code § 19953.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

                         Page 121

XXX.   TWENTY-FIFTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The House of Flava Facility)

482.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

483.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

484.   The House of Flava Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the House of Flava Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

485.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

486.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

487.   Here, Hubbard alleges that the House of Flava Defendants can easily remove the architectural barriers at the House of Flava Facility without much difficulty or expense, and that the House of Flava Defendants violated the

1  ADA by failing to remove those barriers, when it was readily achievable to do
2  so.

3      488.   In the alternative, if it was not "readily achievable" for the House of
4  Flava Defendants to remove the House of Flava Facility's barriers, then the
5  House of Flava Defendants violated the ADA by failing to make the required
6  services available through alternative methods, which are readily achievable.

7              Failure to Design and Construct an Accessible Facility

8      489.   On information and belief, the House of Flava Facility was designed
9  or constructed (or both) after January 26, 1992—independently triggering access
10 requirements under Title III of the ADA.

11     490.   The ADA also prohibits designing and constructing facilities for
12 first occupancy after January 26, 1993, that aren't readily accessible to, and
13 usable by, individuals with disabilities when it was structurally practicable to do
14 so. 42 U.S.C. § 12183(a)(1).

15     491.   Here, the House of Flava Defendants violated the ADA by
16 designing or constructing (or both) the House of Flava Facility in a manner that
17 was not readily accessible to the physically disabled public—including
18 Hubbard—when it was structurally practical to do so.[63]

19              Failure to Make an Altered Facility Accessible

20     492.   On information and belief, the House of Flava Facility was modified
21 after January 26, 1992, independently triggering access requirements under the
22 ADA.

23     493.   The ADA also requires that facilities altered in a manner that affects
24 (or could affect) its usability must be made readily accessible to individuals with
25 disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering
26 an area that contains a facility's primary function also requires adding making

27

28 [63]  Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
     private attorney general under either state or federal statutes.
     *Hubbard v. Plaza Bonita, LP, et al.*
     Plaintiff's Complaint

                                   Page 123

1  the paths of travel, bathrooms, telephones, and drinking fountains serving that
2  area accessible to the maximum extent feasible. Id.

3      494.  Here, the House of Flava Defendants altered the House of Flava
4  Facility in a manner that violated the ADA and was not readily accessible to the
5  physically disabled public—including Hubbard—to the maximum extent
6  feasible.

7                    Failure to Modify Existing Policies and Procedures

8      495.  The ADA also requires reasonable modifications in policies,
9  practices, or procedures, when necessary to afford such goods, services,
10  facilities, or accommodations to individuals with disabilities, unless the entity
11  can demonstrate that making such modifications would fundamentally alter their
12  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

13     496.  Here, the House of Flava Defendants violated the ADA by failing to
14  make reasonable modifications in policies, practices, or procedures at the House
15  of Flava Facility, when these modifications were necessary to afford (and would
16  not fundamentally alter the nature of) these goods, services, facilities, or
17  accommodations.

18     497.  Hubbard seeks all relief available under the ADA (i.e., injunctive
19  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
20  U.S.C. § 12205.

21     498.  Hubbard also seeks a finding from this Court (i.e., declaratory
22  relief) that the House of Flava Defendants violated the ADA in order to pursue
23  damages under California's Unruh Civil Rights Act or Disabled Persons Act.

24                    XXXI.   TWENTY-SIXTH CLAIM

25                          **Disabled Persons Act**

26                        (The House of Flava Facility)

27     499.  Hubbard incorporates the allegations contained in paragraphs 1
28  through 261 for this claim.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

500.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

501.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

502.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

503.   Here, the House of Flava Defendants discriminated against the physically disabled public—including Hubbard—by denying them full and equal access to the House of Flava Facility.   The House of Flava Defendants also violated Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under the Disabled Persons Act.

504.   For each offense of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

He also seeks to enjoin the House of Flava Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

### XXXII.   TWENTY-SEVENTH CLAIM

**Unruh Civil Rights Act**

(The House of Flava Facility)

505.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

506.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

507.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

508.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

509.   The House of Flava Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

510.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

511.   Hubbard was damaged by the House of Flava Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

512.   Hubbard also seeks to enjoin the House of Flava Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XXXIII.   TWENTY-EIGHTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The House of Flava Facility)

513.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

514. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

515. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

516. Hubbard alleges the House of Flava Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the House of Flava Facility was not exempt under Health and Safety Code § 19956.

517. The House of Flava Defendants' non-compliance with these requirements at the House of Flava Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities. Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XXXIV.   TWENTY-NINTH CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The Johnny Rockets Facility)

518. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

519. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

520. The Johnny Rockets Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities,

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1    privileges or accommodations of the Johnny Rockets Facility during each visit
2    and each incident of deterrence.

3    <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

4    521.  The ADA specifically prohibits failing to remove architectural
5    barriers, which are structural in nature, in existing facilities where such removal
6    is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily
7    achievable" is defined as "easily accomplishable and able to be carried out
8    without much difficulty or expense." <u>Id.</u> § 12181(9).

9    522.  When an entity can demonstrate that removal of a barrier is not
10   readily achievable, a failure to make goods, services, facilities, or
11   accommodations available through alternative methods is also specifically
12   prohibited if these methods are readily achievable. <u>Id.</u> § 12182(b)(2)(A)(v).

13   523.  Here, Hubbard alleges that the Johnny Rockets Defendants can
14   easily remove the architectural barriers at the Johnny Rockets Facility without
15   much difficulty or expense, and that the Johnny Rockets Defendants violated the
16   ADA by failing to remove those barriers, when it was readily achievable to do
17   so.

18   524.  In the alternative, if it was not "readily achievable" for the Johnny
19   Rockets Defendants to remove the Johnny Rockets Facility's barriers, then the
20   Johnny Rockets Defendants violated the ADA by failing to make the required
21   services available through alternative methods, which are readily achievable.

22   <u>Failure to Design and Construct an Accessible Facility</u>

23   525.  On information and belief, the Johnny Rockets Facility was
24   designed or constructed (or both) after January 26, 1992—independently
25   triggering access requirements under Title III of the ADA.

26   526.  The ADA also prohibits designing and constructing facilities for
27   first occupancy after January 26, 1993, that aren't readily accessible to, and

28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  usable by, individuals with disabilities when it was structurally practicable to do

2  so. 42 U.S.C. § 12183(a)(1).

3  527. Here, the Johnny Rockets Defendants violated the ADA by

4  designing or constructing (or both) the Johnny Rockets Facility in a manner that

5  was not readily accessible to the physically disabled public—including

6  Hubbard—when it was structurally practical to do so.[64]

7  <u>Failure to Make an Altered Facility Accessible</u>

8  528. On information and belief, the Johnny Rockets Facility was

9  modified after January 26, 1992, independently triggering access requirements

10  under the ADA.

11  529. The ADA also requires that facilities altered in a manner that affects

12  (or could affect) its usability must be made readily accessible to individuals with

13  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering

14  an area that contains a facility's primary function also requires adding making

15  the paths of travel, bathrooms, telephones, and drinking fountains serving that

16  area accessible to the maximum extent feasible. <u>Id</u>.

17  530. Here, the Johnny Rockets Defendants altered the Johnny Rockets

18  Facility in a manner that violated the ADA and was not readily accessible to the

19  physically disabled public—including Hubbard—to the maximum extent

20  feasible.

21  <u>Failure to Modify Existing Policies and Procedures</u>

22  531. The ADA also requires reasonable modifications in policies,

23  practices, or procedures, when necessary to afford such goods, services,

24  facilities, or accommodations to individuals with disabilities, unless the entity

25  can demonstrate that making such modifications would fundamentally alter their

26  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

27

28  _____

[64] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

532.   Here, the Johnny Rockets Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Johnny Rockets Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

533.   Hubbard seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

534.   Hubbard also seeks a finding from this Court (*i.e.,* declaratory relief) that the Johnny Rockets Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## XXXV.   THIRTIETH CLAIM

### Disabled Persons Act

(The Johnny Rockets Facility)

535.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

536.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

537.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

538.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

539.   Here, the Johnny Rockets Defendants discriminated against the physically disabled public—including Hubbard—by denying them full and equal

access to the Johnny Rockets Facility.   The Johnny Rockets Defendants also violated Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under the Disabled Persons Act.

540. <u>For each offense</u> of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

541. She also seeks to enjoin the Johnny Rockets Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XXXVI.   THIRTY-FIRST CLAIM

### Unruh Civil Rights Act

(The Johnny Rockets Facility)

542. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

543. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

544. California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

545. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

546. The Johnny Rockets Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and

equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

547. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

548. Hubbard was damaged by the Johnny Rockets Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

549. Hubbard also seeks to enjoin the Johnny Rockets Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

XXXVII.  THIRTY-SECOND CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Johnny Rockets Facility)

550. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

551. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

552. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

553. Hubbard alleges the Johnny Rockets Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Johnny Rockets Facility was not exempt under Health and Safety Code § 19956.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 132

554. The Johnny Rockets Defendants' non-compliance with these requirements at the Johnny Rockets Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities. Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XXXVIII. THIRTY-THIRD CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Applebee's Facility)

555. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

556. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

557. The Applebee's Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Applebee's Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

558. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

559. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or

accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

560.   Here, Hubbard alleges that the Applebee's Defendants can easily remove the architectural barriers at the Applebee's Facility without much difficulty or expense, and that the Applebee's Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

561.   In the alternative, if it was not "readily achievable" for the Applebee's Defendants to remove the Applebee's Facility's barriers, then the Applebee's Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

562.   On information and belief, the Applebee's Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

563.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

564.   Here, the Applebee's Defendants violated the ADA by designing or constructing (or both) the Applebee's Facility in a manner that was not readily accessible to the physically disabled public—including Hubbard—when it was structurally practical to do so.[65]

<u>Failure to Make an Altered Facility Accessible</u>

565.   On information and belief, the Applebee's Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

---

[65]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 134

1   566.  The ADA also requires that facilities altered in a manner that affects
2   (or could affect) its usability must be made readily accessible to individuals with
3   disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering
4   an area that contains a facility's primary function also requires adding making
5   the paths of travel, bathrooms, telephones, and drinking fountains serving that
6   area accessible to the maximum extent feasible. Id.

7   567.  Here, the Applebee's Defendants altered the Applebee's Facility in
8   a manner that violated the ADA and was not readily accessible to the physically
9   disabled public—including Hubbard—to the maximum extent feasible.

10  Failure to Modify Existing Policies and Procedures

11  568.  The ADA also requires reasonable modifications in policies,
12  practices, or procedures, when necessary to afford such goods, services,
13  facilities, or accommodations to individuals with disabilities, unless the entity
14  can demonstrate that making such modifications would fundamentally alter their
15  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

16  569.  Here, the Applebee's Defendants violated the ADA by failing to
17  make reasonable modifications in policies, practices, or procedures at the
18  Applebee's Facility, when these modifications were necessary to afford (and
19  would not fundamentally alter the nature of) these goods, services, facilities, or
20  accommodations.

21  570.  Hubbard seeks all relief available under the ADA (*i.e.*, injunctive
22  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
23  U.S.C. § 12205.

24  571.  Hubbard also seeks a finding from this Court (*i.e.,* declaratory
25  relief) that the Applebee's Defendants violated the ADA in order to pursue
26  damages under California's Unruh Civil Rights Act or Disabled Persons Act.

27  ///

28  ///

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

## XXXIX.   THIRTY-FOURTH CLAIM

### Disabled Persons Act

(The Applebee's Facility)

572.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

573.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

574.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

575.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

576.   Here, the Applebee's Defendants discriminated against the physically disabled public—including Hubbard—by denying them full and equal access to the Applebee's Facility.   The Applebee's Defendants also violated Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under the Disabled Persons Act.

577.   For each offense of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

578.   She also seeks to enjoin the Applebee's Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XL.   THIRTY-FIFTH CLAIM

### Unruh Civil Rights Act

(The Applebee's Facility)

579.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

580.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

581.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

582.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

583.   The Applebee's Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

584.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

585.   Hubbard was damaged by the Applebee's Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

586.   Hubbard also seeks to enjoin the Applebee's Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

///

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

XLI.   THIRTY-SIXTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Applebee's Facility)

587.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

588.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

589.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

590.   Hubbard alleges the Applebee's Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Applebee's Facility was not exempt under Health and Safety Code § 19956.

591.   The Applebee's Defendants' non-compliance with these requirements at the Applebee's Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities.   Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

XLII.   THIRTY-SEVENTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Motherhood Facility)

592.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

593.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1  offered by any person who owns, operates, or leases a place of public
2  accommodation. 42 U.S.C. § 12182(a).

3      594. The Motherhood Defendants discriminated against Hubbard by
4  denying "full and equal enjoyment" and use of the goods, services, facilities,
5  privileges or accommodations of the Motherhood Facility during each visit and
6  each incident of deterrence.

7         Failure to Remove Architectural Barriers in an Existing Facility

8      595. The ADA specifically prohibits failing to remove architectural
9  barriers, which are structural in nature, in existing facilities where such removal
10  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily
11  achievable" is defined as "easily accomplishable and able to be carried out
12  without much difficulty or expense." Id. § 12181(9).

13      596. When an entity can demonstrate that removal of a barrier is not
14  readily achievable, a failure to make goods, services, facilities, or
15  accommodations available through alternative methods is also specifically
16  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

17      597. Here, Hubbard alleges that the Motherhood Defendants can easily
18  remove the architectural barriers at the Motherhood Facility without much
19  difficulty or expense, and that the Motherhood Defendants violated the ADA by
20  failing to remove those barriers, when it was readily achievable to do so.

21      598. In the alternative, if it was not "readily achievable" for the
22  Motherhood Defendants to remove the Motherhood Facility's barriers, then the
23  Motherhood Defendants violated the ADA by failing to make the required
24  services available through alternative methods, which are readily achievable.

25         Failure to Design and Construct an Accessible Facility

26      599. On information and belief, the Motherhood Facility was designed or
27  constructed (or both) after January 26, 1992—independently triggering access
28  requirements under Title III of the ADA.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

600.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

601.   Here, the Motherhood Defendants violated the ADA by designing or constructing (or both) the Motherhood Facility in a manner that was not readily accessible to the physically disabled public—including Hubbard—when it was structurally practical to do so.[66]

Failure to Make an Altered Facility Accessible

602.   On information and belief, the Motherhood Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

603.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).   Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

604.   Here, the Motherhood Defendants altered the Motherhood Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Hubbard—to the maximum extent feasible.

Failure to Modify Existing Policies and Procedures

605.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity

---

[66]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 140

1    can demonstrate that making such modifications would fundamentally alter their

2    nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

3        606.   Here, the Motherhood Defendants violated the ADA by failing to

4    make reasonable modifications in policies, practices, or procedures at the

5    Motherhood Facility, when these modifications were necessary to afford (and

6    would not fundamentally alter the nature of) these goods, services, facilities, or

7    accommodations.

8        607.   Hubbard seeks all relief available under the ADA (*i.e.*, injunctive

9    relief, attorney fees, costs, legal expense) for these aforementioned violations. 42

10   U.S.C. § 12205.

11       608.   Hubbard also seeks a finding from this Court (*i.e.,* declaratory

12   relief) that the Motherhood Defendants violated the ADA in order to pursue

13   damages under California's Unruh Civil Rights Act or Disabled Persons Act.

                          XLIII.   THIRTY-EIGHTH CLAIM

14
15                          **Disabled Persons Act**

16                        (The Motherhood Facility)

17       609.   Hubbard incorporates the allegations contained in paragraphs 1

18   through 261 for this claim.

19       610.   California Civil Code § 54 states, in part, that: Individuals with

20   disabilities have the same right as the general public to the full and free use of

21   the streets, sidewalks, walkways, public buildings and facilities, and other public

22   places.

23       611.   California Civil Code § 54.1 also states, in part, that: Individuals

24   with disabilities shall be entitled to full and equal access to accommodations,

25   facilities, telephone facilities, places of public accommodation, and other places

26   to which the general public is invited.

27       612.   Both sections specifically incorporate (by reference) an individual's

28   rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

613. Here, the Motherhood Defendants discriminated against the physically disabled public—including Hubbard—by denying them full and equal access to the Motherhood Facility. The Motherhood Defendants also violated Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under the Disabled Persons Act.

614. <u>For each offense</u> of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

615. She also seeks to enjoin the Motherhood Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XLIV.   THIRTY-NINTH CLAIM

### Unruh Civil Rights Act

(The Motherhood Facility)

616. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

617. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

618. California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

619. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

620. The Motherhood Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

621. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

622. Hubbard was damaged by the Motherhood Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

623. Hubbard also seeks to enjoin the Motherhood Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

XLV.   FOURTIETH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Motherhood Facility)

624. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

625. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

626. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

627. Hubbard alleges the Motherhood Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and

that the Motherhood Facility was not exempt under Health and Safety Code § 19956.

628. The Motherhood Defendants' non-compliance with these requirements at the Motherhood Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities. Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XLVI.   FORTY-FIRST CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

#### (The Hollister Facility)

629. Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

630. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

631. The Hollister Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Hollister Facility during each visit and each incident of deterrence.

#### Failure to Remove Architectural Barriers in an Existing Facility

632. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

633. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

634. Here, Hubbard alleges that the Hollister Defendants can easily remove the architectural barriers at the Hollister Facility without much difficulty or expense, and that the Hollister Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

635. In the alternative, if it was not "readily achievable" for the Hollister Defendants to remove the Hollister Facility's barriers, then the Hollister Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

636. On information and belief, the Hollister Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

637. The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

638. Here, the Hollister Defendants violated the ADA by designing or constructing (or both) the Hollister Facility in a manner that was not readily accessible to the physically disabled public—including Hubbard—when it was structurally practical to do so.[67]

///

///

---

[67] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1

### Failure to Make an Altered Facility Accessible

2    639.   On information and belief, the Hollister Facility was modified after

3  January 26, 1992, independently triggering access requirements under the ADA.

4    640.   The ADA also requires that facilities altered in a manner that affects

5  (or could affect) its usability must be made readily accessible to individuals with

6  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).   Altering

7  an area that contains a facility's primary function also requires adding making

8  the paths of travel, bathrooms, telephones, and drinking fountains serving that

9  area accessible to the maximum extent feasible. Id.

10    641.   Here, the Hollister Defendants altered the Hollister Facility in a

11  manner that violated the ADA and was not readily accessible to the physically

12  disabled public—including Hubbard—to the maximum extent feasible.

13

### Failure to Modify Existing Policies and Procedures

14    642.   The ADA also requires reasonable modifications in policies,

15  practices, or procedures, when necessary to afford such goods, services,

16  facilities, or accommodations to individuals with disabilities, unless the entity

17  can demonstrate that making such modifications would fundamentally alter their

18  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

19    643.   Here, the Hollister Defendants violated the ADA by failing to make

20  reasonable modifications in policies, practices, or procedures at the Hollister

21  Facility, when these modifications were necessary to afford (and would not

22  fundamentally alter the nature of) these goods, services, facilities, or

23  accommodations.

24    644.   Hubbard seeks all relief available under the ADA (*i.e.*, injunctive

25  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42

26  U.S.C. § 12205.

27

28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 146

645.  Hubbard also seeks a finding from this Court (*i.e.,* declaratory relief) that the Hollister Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## XLVII.   FORTY-SECOND CLAIM

### Disabled Persons Act

(The Hollister Facility)

646.  Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

647.  California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

648.  California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

649.  Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

650.  Here, the Hollister Defendants discriminated against the physically disabled public—including Hubbard—by denying them full and equal access to the Hollister Facility.  The Hollister Defendants also violated Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under the Disabled Persons Act.

651.  For each offense of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1    652.  She also seeks to enjoin the Hollister Defendants from violating the

2    Disabled Persons Act (and ADA) under California Civil Code § 55, and to

3    recover reasonable attorneys' fees and incurred under California Civil Code §§

4    54.3 and 55.

5                          XLVIII.   FORTY-THIRD CLAIM

6                              **Unruh Civil Rights Act**

7                              (The Hollister Facility)

8    653.  Hubbard incorporates the allegations contained in paragraphs 1

9    through 261 for this claim.

10   654.  California Civil Code § 51 states, in part, that: All persons within

11   the jurisdiction of this state are entitled to the full and equal accommodations,

12   advantages, facilities, privileges, or services in all business establishments of

13   every kind whatsoever.

14   655.  California Civil Code § 51.5 also states, in part, that: No business

15   establishment of any kind whatsoever shall discriminate against any person in

16   this state because of the disability of the person.

17   656.  California Civil Code § 51(f) specifically incorporates (by

18   reference) an individual's rights under the ADA into the Unruh Act.

19   657.  The Hollister Defendants' aforementioned acts and omissions

20   denied the physically disabled public—including Hubbard—full and equal

21   accommodations, advantages, facilities, privileges and services in a business

22   establishment (because of their physical disability).

23   658.  These acts and omissions (including the ones that violate the ADA)

24   denied, aided or incited a denial, or discriminated against Hubbard by violating

25   the Unruh Act.

26   659.  Hubbard was damaged by the Hollister Defendants' wrongful

27   conduct, and seeks statutory minimum damages of four thousand dollars

28   ($4,000) <u>for each offense</u>.

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

                                   Page 148

660.   Hubbard also seeks to enjoin the Hollister Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XLIX.   FORTY-FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

#### (The Hollister Facility)

661.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

662.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

663.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

664.   Hubbard alleges the Hollister Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Hollister Facility was not exempt under Health and Safety Code § 19956.

665.   The Hollister Defendants' non-compliance with these requirements at the Hollister Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities.  Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## L.   FORTY-FIFTH CLAIM

### Americans with Disabilities Act of 1990

#### Denial of "Full and Equal" Enjoyment and Use

#### (The Forever 21 Facility)

666.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

667. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

668. The Forever 21 Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Forever 21 Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

669. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

670. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

671. Here, Hubbard alleges that the Forever 21 Defendants can easily remove the architectural barriers at the Forever 21 Facility without much difficulty or expense, and that the Forever 21 Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

672. In the alternative, if it was not "readily achievable" for the Forever 21 Defendants to remove the Forever 21 Facility's barriers, then the Forever 21 Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

///

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

Page 150

<u>Failure to Design and Construct an Accessible Facility</u>

673.   On information and belief, the Forever 21 Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

674.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

675.   Here, the Forever 21 Defendants violated the ADA by designing or constructing (or both) the Forever 21 Facility in a manner that was not readily accessible to the physically disabled public—including Hubbard—when it was structurally practical to do so.[68]

<u>Failure to Make an Altered Facility Accessible</u>

676.   On information and belief, the Forever 21 Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

677.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).   Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id.</u>

678.   Here, the Forever 21 Defendants altered the Forever 21 Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Hubbard—to the maximum extent feasible.

///

---

[68]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

<i>Hubbard v. Plaza Bonita, LP, et al.</i>
Plaintiff's Complaint

<u>Failure to Modify Existing Policies and Procedures</u>

679.  The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

680.  Here, the Forever 21 Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Forever 21 Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

681.  Hubbard seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

682.  Hubbard also seeks a finding from this Court (*i.e.,* declaratory relief) that the Forever 21 Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

LI.     FORTY-SIXTH CLAIM

**Disabled Persons Act**

(The Forever 21 Facility)

683.  Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

684.  California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

685.  California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations,

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

1 facilities, telephone facilities, places of public accommodation, and other places
2 to which the general public is invited.

3     686.   Both sections specifically incorporate (by reference) an individual's
4 rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

5     687. Here, the Forever 21 Defendants discriminated against the
6 physically disabled public—including Hubbard—by denying them full and equal
7 access to the Forever 21 Facility.   The Forever 21 Defendants also violated
8 Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or
9 both) Hubbard's rights under the Disabled Persons Act.

10     688.   For each offense of the Disabled Persons Act, Hubbard seeks actual
11 damages (both general and special damages), statutory minimum damages of one
12 thousand dollars ($1,000), declaratory relief, and any other remedy available
13 under California Civil Code § 54.3.

14     He also seeks to enjoin the Forever 21 Defendants from violating the
15 Disabled Persons Act (and ADA) under California Civil Code § 55, and to
16 recover reasonable attorneys' fees and incurred under California Civil Code §§
17 54.3 and 55.

18             LII.    FORTY-SEVENTH CLAIM

19                **Unruh Civil Rights Act**

20                (The Forever 21 Facility)

21     689.   Hubbard incorporates the allegations contained in paragraphs 1
22 through 261 for this claim.

23     690.   California Civil Code § 51 states, in part, that: All persons within
24 the jurisdiction of this state are entitled to the full and equal accommodations,
25 advantages, facilities, privileges, or services in all business establishments of
26 every kind whatsoever.

27

28

*Hubbard v. Plaza Bonita, LP, et al.*
Plaintiff's Complaint

691.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

692.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

693.   The Forever 21 Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

694.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

695.   Hubbard was damaged by the Forever 21 Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

696.   Hubbard also seeks to enjoin the Forever 21 Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## LIII.   FORTY-EIGHTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Forever 21 Facility)

697.   Hubbard incorporates the allegations contained in paragraphs 1 through 261 for this claim.

698.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.