1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

BARBARA HUBBARD,

                                        Plaintiff,

        vs.

PLAZA BONITA, LP, et al.,

                                        Defendants.

CASE NO. 09CV1581 JLS (WVG)

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS**

(ECF Nos. 218, 219)

        Presently before the Court is Plaintiff's counsel's objections, (Obj., ECF No. 219), to Magistrate Judge William V. Gallo's order after order to show cause hearings, (Mag. Order, ECF No. 218).  Also before the Court is Defendant Flava Enterprises' response to Plaintiff's counsel's objections.  (Resp. to Obj., ECF No. 227)  Having considered  the parties' arguments and the law, the Court **OVERRULES** Plaintiff's counsel's objections.

## BACKGROUND

        Magistrate Judge Gallo's Order contains a thorough and accurate recitation of the facts underlying his decision to sanction and report Plaintiff's counsel to the State Bar of California.  (*Id.* at 1–4)  This Order incorporates by reference the facts as set forth in that Order.

        In short, Magistrate Judge Gallo concluded that Plaintiff's counsel "unreasonably and vexatiously multiplied the proceedings in this case," "disrupt[ing] the proceedings in this litigation and delay[ing] its conclusion."  (*Id.* at 24)  These findings are based on Plaintiff's counsel's conduct in submitting to Defendants' counsel "a proposed settlement agreement that was represented to contain [the named plaintiff's, Barbara Hubbard,] genuine signature, when the signature was not, in fact, Barbara's signature."  (*Id.* at 22)  In fact, Barbara Hubbard was deceased

1  at the time these proposed settlement agreements were submitted, and therefore could not have

2  signed them herself.

3  **LEGAL STANDARD**

4        Because Magistrate Judge Gallo's Order issuing sanctions and reporting Plaintiff's

5  counsel's conduct to the State Bar of California is a discretionary decision regarding a non-

6  dispositive pretrial matter, the Court must determine whether the order is "clearly erroneous or

7  contrary to law," pursuant to 28 U.S.C. § 636(b)(1)(A).  *See Hoar v. Sara Lee Corp.*, 900 F.2d

8  522, 525 (2d Cir. 1990); *FDIC v. Fidelity & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal.

9  2000).  "Clearly erroneous" review is "significantly deferential, requiring 'a definite and firm

10  conviction that a mistake has been committed.'" *Concrete Pipe & Prods. v. Constr. Laborers*

11  *Pension Trust*, 508 U.S. 602, 623 (1993).  On the other hand, "contrary to law" review "permits

12  independent review of purely legal determinations by the magistrate judge."  *Fidelity*, 196 F.R.D.

13  at 378 (citing, *inter alia*, *Computer Econs., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 983

14  (S.D. Cal. 1999)).

15  **ANALYSIS**

16        Plaintiff's counsel objects to Magistrate Judge Gallo's Order on several bases:

17  (1) Plaintiff's counsel was not given "sufficient, advance notice of exactly what conduct was

18  alleged to be sanctionable," (Obj. 3, ECF No. 219); (2) the imposition of sanctions was "based on

19  a clearly erroneous assessment of the evidence," (*id.* at 5); (3) the imposition of sanctions was

20  based on "erroneous views of California law," (*id.* at 11); and (4) Plaintiff's counsel was denied

21  due process by Judge Gallo's "*in camera* review of opposing counsel's billing statements in order

22  to determine a sanction amount," (*id.* at 13).

23  **1. Notice of Sanctionable Conduct**

24        In Magistrate Judge Gallo's Order to Show Cause, Plaintiff's counsel was directed to

25  "show cause why sanctions should not be imposed on him for allegedly placing Plaintiff's

26  signature on settlement documents prior to and after her death."  (Order to Show Cause 1–2, ECF

27  No.188).  Specifically, Plaintiff's counsel was asked to address the following:

28            1.  Why he should not be required to present to the Court documents and evidence
            that Plaintiff signed [the settlement agreement];

2.  Why he should not be required to provide to the Court additional known and genuine signatures of Plaintiff;

3.  Why he should not be required to identify appearances that Plaintiff personally made in this Court and any documents signed in connection with those appearances;

4.  Why a hearing should not be held as to whether the signatures of Plaintiff in some or all of the settlement agreements in this matter have been falsified, and if so, what actions are appropriate to achieve accountability and deter those who would engage in this conduct;

5.  Why he should not be sanctioned for vexatious and unreasonable multiplication of legal proceedings for:

(a) prolonging the litigation in this matter by demanding settlements involving commitments to make changes to settlement agreements after Plaintiff's death, including provisions in settlement agreements awarding attorneys fees even if the changes were not made;

(b) failing to timely disclose to the Court Plaintiff's death;

6.  Why his conduct should not be reported to the State Bar of California;

7.  Why he and his law firm (Law Offices of Lynn Hubbard III, Disabled Advocacy Group, ALPC) and the attorneys involved in this matter should not be disqualified from further representation of parties in litigation matters in this Court.

(*Id.* 2–3)

The Order issuing sanctions and reporting Plaintiff's counsel to the State Bar of California is based on Magistrate Judge Gallo's conclusions that Plaintiff's counsel lacked authority to sign the settlement agreements on Plaintiff's behalf after her death, (Mag. Order 12–14, ECF No. 218), and that, even if Plaintiff's counsel had such authority, his failure to inform Defendants' counsel that it was not Plaintiff's signature on the settlement agreement was deceptive and punishable conduct, (*id.* at 14–18).  The Court finds that these bases are clearly encompassed by Magistrate Judge Gallo's Order to Show Cause, and thus Plaintiff's counsel was given "sufficient, advance notice of exactly what conduct was alleged to be sanctionable."  (Obj. 3, ECF No. 219) Accordingly, Plaintiff's counsel's objection to Magistrate Judge Gallo's Order on this basis is **OVERRULED**.

//

//

**2.  Imposition of Sanctions Based On Clearly Erroneous Assessment of the Evidence**

Plaintiff's counsel also objects to several of Magistrate Judge Gallo's factual findings. (Obj. 5–10, ECF No. 219)  The Court reviews these factual findings under the "clearly erroneous" standard.

Plaintiff's counsel specifically contests the following factual findings: (1) that Plaintiff's counsel's statement that he had "heard that his mother was 'gravely ill'" contradicted his later declaration that he "personally observed his mother's fragile condition at her hospital bedside," (*id.* at 5); (2) that the fact that the blank settlement agreements were never used indicates that they never existed and that therefore Plaintiff's counsel made false representations of their existence to the court, (*id.* at 5–6); (3) that Plaintiff's counsel misrepresented that no formal decision had been made as to who would be substituted in as plaintiff when in fact Plaintiff's husband had assumed "'unofficial' control of this lawsuit after Barbara's pass[i]ng," (*id.* at 6); (4) that Plaintiff's counsel represented to Defendants' counsel that the settlement agreement contained Plaintiff's genuine signature, (*id.* at 8); (5) that Plaintiff's counsel "wanted to trick Magistrate Gallo,"  (*id.* at 9); (6) that Plaintiff's counsel concealed the death of Plaintiff from the other parties and the Court, (*id.* at 9–10); and (7) that the agency relationship between Plaintiff and Plaintiff's counsel was created for Plaintiff's exclusive benefit and not also for the benefit of Plaintiff's husband, (*id.* at 10).

First, the Court notes that several of these findings of fact were not dispositive of Magistrate Judge Gallo's order, and therefore the Court focuses its discussion, *infra*, on those findings of fact that had a direct bearing on Magistrate Judge Gallo's decision to issue sanctions.[1] Nevertheless, Judge Gallo's nondispositive factual findings bolster the decision to impose sanctions as they highlight Plaintiff's counsel's lack of candor to the Court and to opposing counsel, as well as his disregard of the standards of professional conduct expected of practicing attorneys before this Court.  (*See* Mag. Order 18–19 n.17, ECF No. 218 (noting several statutes and rules of professional conduct that Plaintiff's counsel may have violated))

---

[1] As explained in Magistrate Judge Gallo's Order, "It stretches credulity to believe that Plaintiff's counsel simply and honestly made several mistakes of fact on February 25, 2010.  The circumstantial evidence points to a different conclusion.  However, the resolution of the propriety of sanctions does not turn on a resolution of the *mens rea* behind the February 25, 2010 misrepresentations."  (Mag. Order 23, ECF No. 218)

09cv1581

For example, Judge Gallo notes in his Order the numerous contradictions between Plaintiff's counsel's representations to the Court and to opposing counsel at the February 25, 2010, settlement conference and his later sworn declaration, filed in August 2010.  (*Id.* at 10–11)  Plaintiff's counsel contends that none of these representations amounted to "contradictions," but rather colorfully describes his differing representations as not being "mutually exclusive events":

> For example, if an ice cream parlor sells vanilla ice cream, vanilla does not cease to exist simply because the parlor adds chocolate to the menu.  Nor would the chocolate ice cream cease to exist simply because a customer chooses vanilla.  By extension, simply because attorney Hubbard chose to use his mother's authorization, instead of her blank agreements, does not mean that those agreements never existed.

(Obj. 6, ECF No. 219)  But the analogy is inapt.  Unlike an ice cream parlor, a court is entitled to—and an attorney has a duty to provide—a certain level of candor so that the Court is not left guessing what flavors are on the menu and which the attorney ordered.  *See, e.g.*, *United States v. Associated Convalescent Enters., Inc.*, 766 F.2d 1342, 1346 (9th Cir. 1985) ("An attorney does not simply act as an advocate for his client; he is also an officer of the court.  As such, an attorney has a duty of good faith and candor in dealing with the judiciary.").

Thus, whether or not Plaintiff's counsel's representations—that he heard of his mother's illness and personally visited her bedside, or that he obtained blank settlement agreements but utilized Plaintiff's authorization instead, or that he was considering substituting Chris Kohler as plaintiff though Plaintiff's husband had taken control of the case—were "mutually exclusive" or were intended to "trick" Judge Gallo, they nevertheless fall short of the level of transparency and candor expected of an attorney practicing before this Court.

The Court next turns to those findings of fact that were dispositive of Judge Gallo's Order issuing sanctions.  The Court concludes that none of the findings of fact are clearly erroneous, and, therefore, Plaintiff's counsel's objections are **OVERRULED**.

### A.   That Plaintiff's Counsel Represented to Defendants' Counsel that the Settlement Agreement Contained Plaintiff's Signature

Plaintiff's counsel objects to the portion of Magistrate Judge Gallo's Order finding that Plaintiff's counsel represented to Defendants' counsel that the settlement agreement contained Plaintiff's genuine signature.  (*Id.* at 8)  Plaintiff contends that Defendants' counsel "has *never*

1    claimed that [Plaintiff's counsel] (or any of his staff, for that matter) made such a representation

2    *nor* does the order identify where such a representation was made." (*Id.*)  However, it is clear

3    from Magistrate Judge Gallo's Order that sanctions were based not on any affirmative

4    misrepresentation to Defendants' counsel, but rather on Plaintiff's counsel's failure to inform

5    Defendants' counsel that the signature on the settlement agreements did not belong to Plaintiff.

6    (*See, e.g.*,  Mag. Order 14, ECF No. 218 ("Plaintiff's counsel's failure to inform opposing

7    counsel . . . that the signature on the settlement agreement was not [Plaintiff's].")); (*id.* at 17–18

8    ("Plaintiff's counsel's conduct in *not informing* [Defendants'] counsel that the signatures on the

9    settlement agreements were not, in fact, [Plaintiff's] signature, was deceptive and punishable

10   conduct.")); (*id.* at 22 ("In presenting the settlement agreement to counsel for [Defendants],

11   Plaintiff's counsel failed to inform counsel for [Defendants] and the Court that the signature on the

12   settlement agreement was not that of [Plaintiff], but instead, penned by someone else.")); (*id.* at 23

13   ("Plaintiff's counsel's failure to inform all counsel concerned that the signature on the proposed

14   settlement agreements was not, in fact, [Plaintiff's] signature.").  Defendant Flava Enterprises

15   concurs.  (Resp. to Obj. 7, ECF No. 227 ("[N]o one has claimed that such an express

16   representation was made (i.e., no one has contended that anyone said 'here's a settlement

17   agreement with Barbara Hubbard's true signature').'' (footnote omitted)))

18           The Court finds that Plaintiff's counsel's combined conduct of failing to inform opposing

19   counsel that the signature on the settlement agreements was not Plaintiff's and failing to alert

20   opposing counsel of Plaintiff's death weeks prior to the settlement proposals—whether or not

21   there was a legal duty to do so—support Magistrate Judge Gallo's finding that Plaintiff's counsel's

22   conduct "was done for the purpose of leading opposing counsel to believe that the proposed

23   settlement agreements received by them contained [Plaintiff's] genuine signature, when in fact,

24   they did not." (*Id.* at 24).  Thus, the Court cannot conclude that Magistrate Judge Gallo's finding

25   that Plaintiff's counsel represented that the settlement agreement contained Plaintiff's genuine

26   signature was clearly erroneous, and Plaintiff's objection is **OVERRULED**.

27   //

28   //

1    **B.  *That Plaintiff's Counsel Concealed Plaintiff's Death***

2          Plaintiff's counsel also objects to Magistrate Judge Gallo's conclusion that Plaintiff's death

3    was concealed from the Court and the other parties.  (Obj. 9, ECF No. 219)  Plaintiff's counsel

4    argues that this conclusion is "factually unsupported" given that he notified the Court of Plaintiff's

5    death in another case Plaintiff was prosecuting before Judge Roger Benitez.  (*Id.*)  The disclosure

6    of Plaintiff's death in an unrelated case, against different defendants, and before a different judge,

7    in no way speaks to whether Plaintiff's counsel nevertheless concealed Plaintiff's death in the

8    instant case, however.  Thus, Magistrate Judge Gallo's finding that Plaintiff's counsel concealed

9    Plaintiff's death from the Court and the other parties is not clearly erroneous, and Plaintiff's

10   objection is therefore **OVERRULED**.

11   **C.  *That the Agency Relationship Was Created for Plaintiff's Exclusive Benefit***

12         Plaintiff's counsel contends that Magistrate Judge Gallo's conclusion that Plaintiff's

13   counsel lacked authority to sign settlement agreements on Plaintiff's behalf after her death was

14   based on the clearly erroneous determination that "the agency relationship created between

15   Barbara and attorney Hubbard was created (and held) for her exclusive benefit—*i.e.*, to gain

16   barrier-free access to the stores at Plaza Bonita; not the benefit of her son (*viz.* attorney Hubbard)."

17   (Obj. 10, ECF No. 219)  Plaintiff's counsel argues that the agency relationship was not limited to

18   benefit Plaintiff, but was also created to benefit Plaintiff's husband.  (*Id.*)  Thus, Plaintiff contends

19   that he was acting for the benefit of Plaintiff's husband, not himself, in continuing to pursue

20   settlement after Plaintiff's death, and therefore he had the authority to sign the settlement

21   agreements on Plaintiff's behalf after her death.

22         Even assuming it was error for Magistrate Judge Gallo not to recognize that the agency

23   relationship extended to Plaintiff's husband given Plaintiff's direction to settle the case and give

24   the funds to her husband,[2] as explained *infra* at 9–10, Judge Gallo's issuance of sanctions did not

25   

---

26         [2] Relevant to the determination of whether Plaintiff's counsel's continued settlement
     negotiations were made pursuant to an agency relationship to the monetary benefit of Plaintiff's
27   husband—a determination that this Court does not reach—Defendant Flava indicates that none of the
     proposed settlement agreements sought solely monetary relief.  (Resp. to Obj. 22, ECF No. 227 (citing
28   Peters Decl. ¶ 4, ECF No. 227-1).  This is contrary to Plaintiff's counsel's assertion that because
     Plaintiff "explicitly and unequivocally created an agency relationship for the monetary benefit of her

1    rest on Plaintiff's counsel's lack of authority to sign on behalf of Plaintiff, but rather on his

2    deceptive conduct in failing to disclose that he was doing so.  As such, Plaintiff's objection on this

3    basis is **OVERRULED**.

4    **3.  Imposition of Sanctions Contrary to California Law**

5          Plaintiff's counsel also objects to several of Magistrate Judge Gallo's legal conclusions,

6    arguing that the order contained several "erroneous views of California law."  (Obj. 11, ECF No.

7    219)  Plaintiff's counsel specifically objects to the following legal conclusions: (1) that Plaintiff's

8    counsel had a duty to inform opposing counsel that the signature on the settlement agreement

9    belonged to someone other than Plaintiff, (*id.* at 11–12); and (2) that Plaintiff's counsel's authority

10   to execute settlement agreements on behalf of Plaintiff expired upon her death, (*id.* at 12–13).  The

11   Court reviews purely legal matters to determine whether the decision is contrary to law.

12   *A.  Duty to Inform*

13         Plaintiff's counsel objects to the portion of Magistrate Judge Gallo's Order concluding that

14   Plaintiff's counsel was required to disclose that the signature on the settlement agreements did not

15   belong to Plaintiff.  (*Id.* at 11–12)  Even assuming Plaintiff's counsel had the authority to sign the

16   settlement agreements on Plaintiff's behalf after her death, Plaintiff's counsel's failure to disclose

17   to opposing counsel that the signatures on the settlement agreements were not, as they appeared to

18   be, Plaintiff's genuine signatures, was "deceptive and punishable conduct."  (Mag. Order 18, ECF

19   No. 218)

20         Magistrate Judge Gallo's determination that Plaintiff's counsel's failure to disclose was

21   sanctionable conduct was based on *Hallinan v. State Bar of Cal.*, 33 Cal. 2d 246 (1948).  There,

22   the Supreme Court of California disciplined an attorney who had signed his client's name to a

23   settlement agreement without disclosing that the attorney, and not the client, had signed the

24   settlement papers.  *Id.* at 249.  Although the attorney was legally authorized to sign the client's

25   name on his behalf, it was the attorney's deception in leading opposing counsel to believe that the

26   client had personally signed the settlement papers that the court deemed sanctionable.  *Id.*

27   _____

28   husband . . . attorney Hubbard's settlement offers included <u>no demands for injunctive relief</u>—just
     monetary damages for his father."  (Obj. 10, ECF No. 219)

1      Plaintiff's counsel contends that Magistrate Judge Gallo's application of *Hallinan* to the

2  instant case was "contrary to law" because in *Hallinan*, "the defense <u>explicitly</u> requested that the

3  plaintiff sign the release agreement as a condition of settlement," whereas no such explicit request

4  was made here.  (Obj. 11, ECF No. 219)  Although the Court agrees that it would be "casting too

5  wide of a net" had Judge Gallo concluded that *anytime* attorneys fail to disclose that they have

6  signed on behalf of a client it constitutes deceptive and therefore sanctionable conduct, (*id.*), the

7  Court disagrees with Plaintiff's counsel's contention that Judge Gallo has cast the net this wide.

8      Although defense counsel may not have "explicitly" requested that Plaintiff sign the

9  settlement agreements herself, *Hallinan* is still analogous to the situation here.  In *Hallinan*, it was

10  not merely opposing counsel's request that the signature be genuine that prompted sanctions, but

11  rather the attorney's act of deception in leading opposing counsel to believe that the signature

12  belonged to his client.  *Hallinan*, 33 Cal. 2d at 249.  Likewise here, Plaintiff's combined conduct

13  of failing to inform opposing counsel that the signature on the settlement agreements was not

14  Plaintiff's and failing to alert opposing counsel of Plaintiff's death was deceptive in that it was

15  designed to lead opposing counsel to believe that the signatures were genuine.  *See supra* at 5.

16  Thus, Magistrate Judge Gallo's application of *Hallinan* was appropriate in scope and cannot be

17  deemed contrary to law.[3]  Plaintiff's counsel's objection is therefore **OVERRULED**.

18  //

19  //

20  —————————————

21      [3] Plaintiff's counsel places heavy reliance on *In re Lazarus*, No. 86-0-14113, 1991 WL 33679,
    at *7 (Cal. Bar Ct. 1991).  There, the State Bar of California distinguished *Hallinan* on the basis that

22  "there is no evidence here that the bank placed any particular importance on obtaining Vinzon's
    personal endorsement of the check."  *Id.*  Thus, Plaintiff's counsel contends, *Hallinan* stands merely

23  for the proposition that an attorney's conduct in failing to disclose that a signature is not genuine is
    sanctionable only when opposing counsel has explicitly indicated a preference for a genuine signature.

24  Even assuming this interpretation of *Lazarus* and *Hallinan* is correct—which the Court
    doubts—Plaintiff's counsel fails to account for the fact that Defendants did have a preference for

25  Plaintiff's genuine signature here.  (*See* Mag. Order 15–16, ECF No. 218 ("Flava alleges that it acted
    upon the signed settlement documents as having Barbara's genuine signature on them.  One of the

26  Defendants (Hot Topic), paid money to settle its action with Barbara, in reliance that Barbara actually
    signed the settlement agreement.  Flava asserts that it incurred significant time and expense in

27  believing the same thing and acting pursuant thereto."))  Because Plaintiff's death may have altered
    Defendants' decision whether to settle, it was plainly important to the Defendants here whether the

28  settlement agreements contained Plaintiff's genuine signature.  Thus, Plaintiff's counsel's reliance on
    and interpretation of *Lazarus* is misplaced.

***B. Authority to Execute Settlement Agreements***

Plaintiff's counsel next objects to Magistrate Judge Gallo's conclusion that Plaintiff lacked authority to enter into settlement agreements on Plaintiff's behalf after her death. (Obj. 12, ECF No. 219) Specifically, Plaintiff's counsel argues that under *Mallory v. Ritten-House* (*In re Mallory*), 278 P. 488 (Cal. Ct. App. 1929), "an attorney may continue to represent a deceased client if they entered into 'a special contract of employment, such as a specific contract to conduct a suit to final judgment.'" (Obj. 12, ECF No. 219 (quoting *In re Mallory*, 278 P. at 491)) Although Magistrate Judge Gallo recognized the existence of such an exception to the general rule that the attorney-client relationship terminates at the death of the client, (Mag. Order 12, ECF No. 218), and that Plaintiff's counsel entered into such an agreement with Plaintiff prior to her death, (*id.* 12–13), Judge Gallo ultimately concluded that the exception did not apply here where Plaintiff's counsel was acting to bring the case to settlement rather than "final judgment," (*id.* at 14). Plaintiff's counsel argues that this latter determination is contrary to law. (Obj. 12, ECF No. 219)

The Court declines to consider whether Magistrate Judge Gallo's refusal to view bringing a suit to settlement and bringing a suit to final judgement as legal equivalents is contrary to law, given that Judge Gallo's decision to implement sanctions was based not on his determination that Plaintiff's counsel lacked authority to enter into settlement agreements on Plaintiff's behalf, but rather on Plaintiff's deceptive acts in failing to inform opposing counsel that the signatures on those agreements did not in fact belong to Plaintiff:

> Regardless of whether 'final judgment' and 'settlement' are functional equivalents or whether the attorney-client relationship survived Barbara's death, the <u>Mallory</u> exception does not excuse or justify Plaintiff's counsel's failure to inform opposing counsel that Barbara had died, that the signature on the settlement agreement was not hers, and that Plaintiff's counsel was relying on <u>Mallory</u> for authority to sign the settlement agreement and bring the case to conclusion. In other words, Plaintiff's counsel's conduct lacked the transparency and candor expected of counsel practicing before this Court.

(*Id.*) As such, even assuming Magistrate Judge Gallo's conclusion regarding the legal equivalency of the two ways of ending a case was contrary to law—if indeed he reached such a

1   conclusion[4]—because it had no bearing on the decision to implement sanctions, Plaintiff's

2   counsel's objection is **OVERRULED**.

3   **4. Due Process Violation**

4        Finally, Plaintiff's counsel "objects to the *in camera* review of opposing counsel's billing

5   statements in order to determine a sanction amount." (Obj. 13, ECF No. 219)  Having determined

6   that sanctions were appropriate, Magistrate Judge Gallo ordered Defendant Flava's counsel to

7   submit "billing statements for all work and expenses incurred that directly resulted from Plaintiff's

8   counsel's submitting to him a proposed settlement agreement in this case which purported to bear

9   Barbara's genuine signature, but was not, in fact, Barbara's genuine signature." (Mag. Order

10  24–25, ECF No. 218)  After reviewing the billing statements *in camera*, Magistrate Judge Gallo

11  indicated that he would "issue appropriate monetary sanctions against Plaintiff's counsel." (*Id.* at

12  25)

13       Plaintiff does not provide any supporting argument for his objection, stating only that he is

14  "preserv[ing] the issue for appeal," and that Magistrate Judge Gallo's decision "departs from the

15  well established rules governing fee awards, and deprives him of notice and due process." (Obj.

16  13, ECF No. 219)  As Defendant Flava points out, however, "the Order does not suggest that any

17  time entries Magistrate Judge Gallo considers significant will not thereafter be filed or that

18  Attorney Hubbard will not have an opportunity to respond to any basis for any sanctions which

19  might be issued." (Resp. to Obj. 27, ECF No. 227 (stating, in addition, that "[i]f Magistrate Judge

20  Gallo were to issue a financial sanction based only on the *in camera* review of billing statements,

21  we agree that the penalized party would be entitled to an opportunity to review and comment on

22  the basis for the sanction"))  The Court agrees with Defendant Flava's view of this issue and

23  accordingly **OVERRULES** Plaintiff's counsel's objection on this basis.

24  //

25  //

26

27       [4] The Court notes that Magistrate Judge Gallo's Order merely states that "the Court does not
28  adopt the view that the two ways of ending a case . . . are equivalent." (Mag. Order 14, ECF No. 218)
    The Order does not indicate whether Judge Gallo actually adopted the opposite view—that the two
    ways of ending a case are *not* equivalent.

1

**CONCLUSION**

2          For the reasons stated above, the Court **OVERRULES** Plaintiff's counsel's objections to

3   Magistrate Judge Gallo's order after order to show cause hearings in their entirety.  Judge Gallo's

4   Order is neither clearly erroneous nor contrary to law.

5          **IT IS SO ORDERED**.

6   DATED:  November 29, 2011

7                                                          _____
                                                           Honorable Janis L. Sammartino
8                                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09cv1581